OPINION OF THE COURT
Cooke, J.
Despite recent changes in statutory law, there remains a heavy burden of constitutional magnitude on one who would *387 terminate the rights of a natural parent through adoption. We hold that on this record that burden has not been satisfied.
This is an adoption proceeding in which petitioners, the natural mother and her second husband, assert that the respondent natural father has abandoned the child and hence that his consent is not required. Respondent vigorously contests the allegation and seeks to retain his parental relationship.
The male child, the only offspring of the former union, was born on November 10, 1969. The natural father entered the Air Force in November, 1970 and was discharged on October 19, 1973. During the father’s military service, in August 1971, the parties entered into a separation agreement which provided that the mother would have custody of the boy and that the father would pay child support of $25 per week. Shortly thereafter, on August 13, 1971, they divorced and on May 19, 1973 the natural mother married the copetitioner in this proceeding. Then, in May of 1974, the petition for adoption ensued.
Both petitioners and respondent reside in the same rural area. While the latter was in the military service, he regularly visited the child whenever he was home on leave. However, from the time of discharge from service in October of 1973 until the commencement of hearings before the Family Court on October 29, 1975, he visited the child only two or three times and called the infant on approximately four occasions. In addition, owing to the fact that all of the parties live in the same community, there may have been chance meetings at a grocery store or when the boy was riding his bicycle, but nothing of a substantial nature. It also appears that respondent did not pay any support for the infant from October of 1972 up to the inception of the hearings in 1975, although there was some dispute over whether there was an overpayment in 1972, and it is quite certain that no support was paid after the mother remarried in 1973.
At the adoption hearings, the natural father unequivocally expounded his devotion to the child, partially tried to explain the failure to furnish support on the grounds of inability to pay, and expressed confidence in his paternal reliability as well as his future financial responsibility. His feelings for the child were corroborated by a disinterested babysitter characterized, with another, by the Family Court as having given the most reliable evidence. She testified that when she saw *388 them together the infant was happy to see his father and that the latter appeared emotional in that tears came to his eyes.
Family Court decided that the respondent abandoned the child and in this regard concluded, as a matter of law, that the occasional visits with the infant were not sufficient to defeat the claim of abandonment. In so holding, the Judge applied an amendment to section 111 of the Domestic .Relations Law which provided that "evidence of insubstantial and infrequent contacts by a parent with his or her child shall not, of itself, be sufficient as a matter of law to preclude a finding that such parent has abandoned such child” (L 1975, ch 704, § 3). The court stated that based on this modification "The Legislature now requires that more than sporadic or minimal acts of parenthood be demonstrated in order to defeat the claim of abandonment.”
Abandonment was also said to have resulted from failure to pay support for two years, and much was made of respondent’s failure to take any action whatsoever to obtain visitation rights after May of 1974 when he received formal and actual notification of the petition to adopt his son. In addition, based on a report from the Department of Social Services, the Family Court concluded that it would be in the best interests of the child to allow the adoption.
The Appellate Division affirmed, with one dissent. That court also placed reliance on amendments to the law providing that proof of insubstantial contacts shall not, of itself, be sufficient, as a matter of law, to preclude a finding of abandonment.
Initially, it is observed that the amendment to section 111 of the Domestic Relations Law (L 1975, ch 704, § 3) became effective on August 9, 1975, which was two months prior to the hearings in this matter and four months prior to the Family Court’s order.. Notably, the statute lacks the savings clause found in chapter 666 of the Laws of 1976 (see Matter of Goldman, 41 NY2d 894). In these circumstances, it was appropriate for the courts below to apply this modification in aid of their determinations (see Matter of Ray A. M., 37 NY2d 619, 621; Matter of Clayton v Clement, 33 NY2d 386; Matter of L’Hommedieu v Board of Regents of Univ. of State of N. Y., 276 App Div 494, 507, affd 301 NY 476, affd 342 US 951). However, while it was proper to apply the new standard, the manner of application was erroneous because of a more fundamental and overriding principle.
*389 The Legislature has been for some time concerned with the stringent test for a judicial finding of abandonment (see Matter of Anonymous [St. Christopher’s Home], 40 NY2d 96, 101-102; Matter of Orlando F., 40 NY2d 103, 111). Difficulty was encountered with the decisionally established standard which has been thus expressed: "Even where the flame of parental interest is reduced to a flicker the courts may not properly intervene to dissolve the parentage” (Matter of Susan W. v Talbot G., 34 NY2d 76, 80). To be sure, the amendments to section 111 of the Domestic Relations Law were designed to override the "flicker of interest” test and thereby ease the burden on the party seeking to prove abandonment (see Memorandum of Joseph R. Pisani, New York State Senator, in support of Senate Bill 1992-A for 1975, NY Legis Ann, 1975, p 62). Nevertheless, while accepting the change wrought by statutory law, this court has and must continue to respect constitutional limitations on the procedures for termination or deprivation of parental rights (see Matter of Goldman, 41 NY2d 894, 895, supra; Matter of Bennett v Jeffreys, 40 NY2d 543, 548).
While a determination of whether parental rights have been surrendered ordinarily involves an evaluation of factual and evidentiary material, the ultimate question is whether the submitted proof establishes abandonment as a matter of law (see Matter of Bistany, 239 NY 19, 24; Matter of Maxwell, 4 NY2d 429, 433). Stated differently, there must be legally sufficient evidence to support the determination.
The statutory alteration under review seeks to overcome an impediment to termination of parental rights, but this provision becomes operative only if a finding of abandonment is thwarted because of a "flicker of interest” resulting merely from infrequent contact with the child. Analysis of the evidence should not begin with this amendment since it has no application to the court’s initial evaluation of the circumstances, and it should not be employed until the court is fully satisfied that there has been an abandonment but for some insignificant contact with the child. The basic principles have not been abrogated (see Matter of Abraham L., 53 AD2d 669, 670; cf. Matter of Bennett v Jeffreys, 40; NY2d 543, 548, supra). In other words, the statute does not, and probably could not, mandate a conclusion that insubstantial visitation, ipso facto, constitutes abandonment, but only advises that *390 such infrequent contact shall not be sufficient as a matter of law to preclude a finding by the court.
On this record, a determination of abandonment was unwarranted. It is not disputed that respondent consistently saw the child during his Air Force leaves. However, he was discharged from the service in October of 1973, and a short time thereafter, in May of 1974, was greeted with a petition for adoption. By this time, the natural mother, respondent’s former spouse, had remarried and there is considerable indication that relations were strained. The hearings began in October of 1975 and, significantly, the courts below considered the time between the filing of the petition in May of 1974 and the beginning of court proceedings in determining the period of abandonment. Hence, not including this time segment, the claim of abandonment alleged in the petition covers a short period of at best the eight months following respondent’s discharge from the military. In these circumstances, covering this relatively brief span of time, abandonment was not established.
While there may be instances when the interval between the commencement of a proceeding and the formal hearings should be considered as part of the period of abandonment, in this context inclusion of this segment manifests the lack of evidence in support of the determination (see Matter of Beshures, 41 AD2d 1016). Moreover, though two years of infrequent contact would likely be adequate to find abandonment in another setting, in view of the circumstances, here, this is simply too brief a period to justify a conclusion with such drastic consequences. That the natural father did not take action to secure his visitation rights is also not crucial in light of the disputes in the record over whether access to the child was thwarted. In short, the point is that, when all the facts and circumstances are viewed in perspective, there is not enough on this record to show abandonment.
The failure to furnish support, though significant, is not determinative and properly may be explained (see Matter of Susan W. v Talbot G., 34 NY2d 76, 80, supra; Matter of Bistany, 239 NY 19, 23, supra). Despite the suggestion that since respondent was earning a fairly regular income he could fulfill his obligations, the record indicates that following his discharge from service and up to the commencement of the proceedings his net income was about $80 a week. When the support payments of $25 per week are measured against this *391 income, the difficulty of discharging the obligation becomes mainfest. This is not to imply in any manner that respondent could ignore his duty, but to note that in this instance his failure is not of such gravity as to constitute abandonment.
Petitioners urge that "when the factual situation is within the gray area the Court should find an abandonment and conclude that the best interests] of the child be considered paramount to the parental interest”. But at this juncture, "[w]e do not dwell upon such considerations, for they are foreign to the issue. * * * The petitioners ask for more than custody. They seek to make the child their own” (Matter of Bistany, 239 NY 19, 24 [Cardozo, J.], supra). Under section 111 of the Domestic Relations Law as applied to the instant facts, the consent of the natural father or an abandonment was a prerequisite to the judicial termination of his parental relationship. Absent consent, the first focus here was on the issue of abandonment since neither decisional rule nor statute can bring the relationship to an end because someone else might rear the child in a more satisfactory fashion (cf. Matter of Bennett v Jeffreys, 40 NY2d 543, 548, supra). Abandonment, as it pertains to adoption, relates to such, conduct on the part of a parent as evinces a purposeful ridding of parental obligations and the foregoing of parental rights — a withholding of interest, presence, affection, care and support. The best interests of the child, as such, is not an ingredient of that conduct and is not involved in this threshold question. While promotion of the best interests of the child is essential to ultimate approval of the adoption application, such interests cannot act as a substitute for a finding of abandonment (see Matter of Paden, 181 Misc 1025, 1027; 2 NY Jur, Adoption, § 2, p 5).
The severance of the parental tie could not be predicated upon the report of the Department of Social Services that the adoption would be in the best interests of the child. Where the issue was the right of a natural parent to custody of his child, this court has not hesitated to hold that a parent cannot be displaced because "someone else could do a 'better job’ of raising the child”; rather, only when "extraordinary circumstances” such as abandonment, unfitness, or persistent neglect are found, "the court must then make the disposition that is in the best interest of the child” (Matter of Bennett v Jeffreys, 40 NY2d 543, 548, supra). If, for purposes of determining mere custody, the best interests of the child would not permit a *392 parent to be displaced in the absence of extraordinary circumstances, surely a complete termination of obligations and rights is not to be allowed in a situation where, as here, abandonment has not been established, even if an ensuing adoption might be viewed by some to be in the best interests of the child.
 The filial bond is one of the strongest, yet most delicate, and most inviolable of all relationships, and in dealing with it we must realize that a child is not a mere creature of the State for distribution by it (cf. Pierce v Society of Sisters, 268 US 510, 535). This is not a new problem. It is fraught with emotion, impossible to compromise and one in which the stakes are high. There has always been abiding respect for the rights of natural parents (see People ex rel. Kropp v Shepsky, 305 NY 465, 468-469; Matter of Livingston, 151 App Div 1, 7). On the other hand, there is a co-ordinate need to protect children. Certainly, the amendments to section 111 of the Domestic Relations Law (L 1975, ch 704, § 3; see, also, L 1976, ch 666) may be viewed as an expression of a desire to move the courts away from a perceived tendency to favor the residual rights of abandoning parents to the detriment of the child. Nevertheless, the statute should not be so broadly applied that it establishes a preference. A termination of parental rights is a drastic event indeed, so much so that it raises questions of constitutional dimension (see Matter of Goldman, 41 NY2d 894, 895 supra; Matter of Bennett v Jeffreys, 40 NY2d 543, 548, supra). In any event, on this record, the burden necessary to determine those rights has not been met.
Accordingly, the order of the Appellate Division should be reversed, without costs, the petition for adoption dismissed, and the matter remitted to the Family Court, Chenango County, for further proceedings on appellant’s application for custody or visitation.