66 A.D.2d 723 (1978)
In the Matter of Suzanne N. Y., an Infant, Alleged to be a Permanently Neglected Child. Jewish Child Care Association, Respondent-Appellant; Elaine S. Y., Appellant-Respondent
Appellate Division of the Supreme Court of the State of New York, First Department.
December 21, 1978
Concur  Murphy, P. J., Fein, and Markewich, JJ.
If at all possible, the new trial shall begin within 60 days after the order determining this appeal. (Previous appeal, see 54 AD2d 673.) The Trial Judge found neither permanent neglect nor that the mother is presently and for the foreseeable future unable, by reason of mental illness or mental retardation, to provide proper and adequate care for the child (Family Ct Act, §§ 611, 622; Social Services Law, § 384-b, subd 7, par [a]; § 384-b, subd 4, par [c]). In the absence of such findings, the statute literally requires that the court shall dismiss the petition. (Family Ct Act, §§ 622, 632, subd [a].) The Trial Judge nevertheless granted the prayer of the petition and terminated appellant mother's parental rights with respect to Suzanne on the ground that it was time for the pronouncement of a "no fault" theory based on the best interests of the child. The Trial Judge's view of the law appears to be supported by the decision of the closely divided Appellate Division, Second Department, in Matter of Sanjivini K. (63 AD2d 1021). But since then the Court of Appeals has decided Matter of Corey L v Martin L (45 N.Y.2d 383, 389-391) in which it reaffirmed the importance of strict adherence to the statutory scheme in cases involving termination of parental rights and rejected consideration of the child's best interests alone *724 as "foreign to the issue" in the absence of prerequisite findings as to the parents' conduct. The agency and the Legal Aid Society as guardian for the infant ask us to supply the necessary prerequisite to a termination of parental rights by making a finding that the child is permanently neglected because of appellant mother's failure to plan for the future of the child for more than one year following the date the child came into the care of an authorized agency. (Social Services Law, § 384-b, subd 7, par [a]; Family Ct Act, § 611.) We decline to make such a finding. We share with our dissenting brothers their concern for the best interests of the child as well as the respect due the parent and child tie, and their concern at the time that this proceeding has already endured without a final determination. But we think that the interests of everyone will be better protected by our adhering to procedural regularity, by not attempting as an appellate court to try to make the findings of fact which a trial court seeing and hearing the witnesses and the parties is so much better able to do, especially where so much depends on a judgment as to the personalities, abilities, emotions and actions of the parties. We think it is better that a Trial Judge make the appropriate findings after a hearing conducted by a Judge who does not share the view of the law enunciated by Judge Gartenstein and with which we disagree. We note particularly that we are making no determination as to physical custody which presents somewhat different considerations than does termination of parental rights. (Cf. Matter of Bennett v Jeffreys, 40 N.Y.2d 543, 545.) The child is now with foster parents and was with them before the order terminating parental rights. If and when the question of changing physical custody comes up, we must assume that the court will apply appropriate rules of law based on the factual situation as it may then exist. Despite its order terminating the natural parent's parental rights, the Family Court provided for visitation by the natural mother. There are serious problems as to whether the court had power to make such a provision. But as we are reversing the order terminating parental rights, the issue of power is no longer before us. We reverse the provision for visitation so as to leave the Family Court free to make such provision on such notice to parties in interest, as may be appropriate.
Silverman and Sandler, JJ., dissent in part in a memorandum by Silverman, J., as follows:
We would affirm the order appealed from insofar as it terminates the natural mother's parental rights. We agree that the statutory language (Family Ct Act, §§ 622, 632, subd [a]) and the recent decision of the Court of Appeals in Matter of Corey L v Martin L (45 N.Y.2d 383) cast serious doubts on the validity of the Trial Judge's "no fault" best-interests-of-child basis for termination of parental rights. We think, however, that the evidence justifies a finding of permanent neglect based on the natural parent's failure to plan for the future of the child for a period of more than a year following the date the child came into the care of an authorized agency. (Social Services Law, § 384-b, subd 7, par [a]; Family Ct Act, § 611.) The child Suzanne was born on April 15, 1972. One month later she was placed on an emergency basis on a finding of neglect with respondent agency, Jewish Child Care Association. She has never since lived with her natural mother. In August, 1972, the child was placed with the foster parents with whom she has resided ever since. (The foster parents have since obtained a decree of adoption of Suzanne, although the validity of that adoption has been brought into serious question by later events.) Arrangements were made for the natural parents to visit Suzanne, at first at the home of the foster parents and later at the agency. The natural mother *725 wished to pay off debts and to continue a career of singing and dancing. In the course of discussions about the possibility of the natural mother's planning for the return of Suzanne, the mother said she would like to leave Suzanne in foster care for two to three years; and on a later occasion that she wanted to surrender Suzanne for adoption by the foster parents for five years. Never did she make or co-operate in making any concrete, realistic plans for taking care of the child. On July 8, 1974, the mother signed a surrender form freeing Suzanne for adoption, which, however, she revoked on July 18, 1974. But again she was ambivalent about wanting Suzanne to be adopted. For a period the mother left the State without giving anyone her address but only a telephone number with her agent in case he obtained a booking for her. In July, 1974, the mother separated from her husband, the father of Suzanne, and went to live with another man, who became the father of her second daughter Hime. That child has also resided in a foster home from about the age of one month. At the time of the trial below, the mother lived alone in a one-room apartment. Her only "plans" for the child were "to take the child home"; to take the child home when her psychiatrist indicated she was ready to do so; to place the child in a day care facility; to find an adequate apartment and "make room for" the two children. On September 16, 1974, a petition was filed for termination of parental rights on the ground of failure to plan. After a number of adjournments, a hearing was finally held in the mother's absence and the petition was granted on July 8, 1975. After further proceedings, including a motion to dismiss the mother's appeal for failure to prosecute, this court on October 28, 1976 (54 AD2d 673) reversed the orders denying vacatur of default and remanded the matter for a hearing as to willfulness, etc.. After further proceedings and a new hearing, the order appealed from was made granting a "no fault" termination of parental rights. Section 384-b (subd 7, par [c]) of the Social Services Law now provides: "`to plan for the future of the child' shall mean to take such steps as may be necessary to provide an adequate, stable home and parental care for the child within a period of time which is reasonable under the financial circumstances available to the parent. The plan must be realistic and feasible, and good faith effort shall not, of itself, be determinative." In this respect, it merely restates existing law. In the present case, the mother's plans for the return of the child can hardly be deemed "realistic and feasible." (Cf. Matter of Orlando F., 40 N.Y.2d 103, 110; Matter of Stephen B., 60 Misc 2d 662, 668, affd sub nom. Matter of Behrman, 34 AD2d 527.) Even a parent's "burning desire" for the return of the child does not meet this requirement in the face of a history of long term failure to take the child back. (Matter of Orlando F., supra, p 110.) Section 384-b (subd 1, par [b]) of the Social Services Law now provides: "The legislature further finds that many children who have been placed in foster care experience unnecessarily protracted stays in such care without being adopted or returned to their parents or other custodians. Such unnecessary stays may deprive these children of positive, nurturing family relationships and have deleterious effects on their development into responsible, productive citizens. The legislature further finds that provision of a timely procedure for the termination, in appropriate cases, of the rights of the natural parents could reduce such unnecessary stays." In Matter of Orlando F. (supra, p 111), the Court of Appeals said: "State Senator Joseph R. Pisani, Chairman of the Temporary State Commission on Child Welfare, in support of the aforementioned 1973 amendment, wrote: `* * * A child is no less in limbo when kept in foster care year after year when the parent or custodian is physically and financially able to provide a home but fails to do so.' (NY Legis Ann, 1973, p 35.) *726 Such is the case here. The child has remained with the foster parents virtually since birth and they have expressed a desire to adopt. When the natural parent fails to accept the parental role, even though the result of shortcomings for which he or she may not be fully responsible, the `best interests' of the child, the pivotal consideration underlying all of these proceedings, dictates that the right to custody be terminated." We cannot blink the facts that Suzanne is now six and one-half years old; that for more than six of those years she has lived with her foster parents and to her these foster parents and home are her parents and home; that she has never really had any other parents or home; that for the two and one-half years after Suzanne's birth and prior to the filing of the petition, her natural mother did not make any realistic effort or plan to take Suzanne back. We appreciate the undesirability in the usual case of this court making original findings of fact where much depends on seeing the parties. But time will not stand still during Suzanne's childhood. This proceeding has now been pending more than four years  two thirds of Suzanne's life; and with the best will in the world, it now seems unlikely that it will terminate in less than another year or two. As the Court of Appeals said in Matter of Sanjivini K. (40 N.Y.2d 1025, 1026-1027): "We are prompted, however, in the circumstances disclosed in the record now before us to urge that all proceedings concerning the child be conducted to their final conclusions with dispatch, in the best interests of the child. To accomplish that result both the Family Court, because of its wide original jurisdiction, and the Appellate Division, given its broad power of review over facts and its equally extensive power to exercise discretion, may choose to initiate, consolidate, or review all proceedings heretofore initiated and any which may hereafter be brought. The subject of all these proceedings is a young child, and ingenuity and energy should be brought to bear, within the limits of due process of law and the applicable statutes, promptly to make appropriate provision for her welfare."