■    In the Matter of MICHAEL LEE QQ., by SUSAN R. PP. et al., Respondents, v MICHAEL LEE QQ., Appellant.—Appeal from an order of the Family Court of Broome County, entered October 4, 1979, which dispensed with the consent of the natural father to the adoption of his child. Respondents, the natural mother and her present husband, seek adoption of the child by the natural mother's present husband. They allege that the consent of appellant, the natural father, was not required because he abandoned the child. Following a hearing on September 17, 1979, the Family Court concluded that appellant had abandoned his son and that his consent to the adoption was unnecessary. Both appellant and respondent natural mother (hereinafter referred to as respondent) testified at the adoption hearing. Their testimony revealed the following: They were married on May 30, 1969. Their son, Michael, was born on November 6, 1969. The couple was divorced in April of 1973. During their marriage, appellant was in prison frequently. He was first incarcerated in May of 1970 and was not released until June of 1972. He was again incarcerated in December of 1972 and was released in August of 1973. Appellant visited Michael following his release from prison. However, in September of 1973, respondent forbade further visits. She informed appellant that she would only allow him to visit Michael if appellant would get a job and prove himself to be a "fit father". Accordingly, appellant last saw his son in September of 1973. Appellant was convicted of third degree robbery in 1974 and was incarcerated in Attica Correctional Facility until January, 1976. In June, 1976 he moved temporarily to South Carolina. He contacted respondent while he was there. However, she refused to divulge the child's whereabouts. Appellant subsequently filed a petition for visitation with his son in the Broome County Family Court, but apparently visitation was never arranged. In January, 1978 appellant was convicted of first degree burglary and has been incarcerated in various State correctional facilities since then. He is currently incarcerated in Otisville and will be eligible for parole in September of this year. During this current term of imprisonment, appellant has sent Christmas, Easter and birthday cards to Michael. In November, 1978 he also sent the boy two glass paintings which he had made in prison. However, late in 1978, respondent filed a request with the authorities at Otisville that appellant be directed not to mail anything further either to her or to their son. Appellant was forced to comply. Respondent married her present husband in February, 1978. A daughter was born to them in July, 1978. It is now her wish to make Michael a permanent part of her new family. Respondents contend, and the Family Court held, that appellant abandoned his son pursuant to section 111 (subd 2, par [a]) of the Domestic Relations Law. This section provides that consent to adoption shall not be required of a parent "who evinces an intent to forego his or her parental * * * rights and obligations as manifested by his or her failure for a period of six months to visit the child and communicate with the child or person having legal

custody of the child, although able to do so" (Domestic Relations Law, § 111, subd 2, par [a]). While section 111 of the Domestic Relations Law has been amended to override the "flicker of interest" test enunciated in *Matter of Susan W. v Talbot G.* (34 NY2d 76, 80), the Court of Appeals has held that "the statute does not * * * mandate a conclusion that insubstantial visitation, *ipso facto,* constitutes abandonment, but only advises that such infrequent contact shall not be sufficient as a matter of law to preclude a finding by the court" *(Matter of Corey L v Martin L,* 45 NY2d 383, 389-390). The threshold question is still whether there was an abandonment, i.e., "such conduct on the part of the parent as evinces a purposeful ridding of parental obligations and the foregoing of parental rights—a withholding of interest, presence, affection, care and support" *(Matter of Corey L v Martin L, supra,* p 391). The court went on to state (p 391): "The-best interests of the child, as such, is not an ingredient of that conduct and is not involved in this threshold question. While promotion of the best interests of the child is essential to ultimate approval of the adoption application, such interests cannot act as a substitute for a finding of abandonment [citations omitted]." Application of these principles to the facts of his case leads to the conclusion that the Family Court erred in finding that appellant has abandoned his son. It is uncontroverted that appellant was unable to visit his son during the periods of his incarceration—which has continued throughout much of the child's life. Parenthetically, we note that section 384-b (subd 7, par [d], cl [ii]) of the Social Services Law states that a parent "shall be deemed unable to maintain contact with * * * [a] child while he is actually incarcerated". Accordingly, respondents have failed to carry "The heavy burden of proving abandonment" *(Matter of Goldman,* 41 NY2d 894, 895; *Matter of Sean "Y" v John "Y",* 62 AD2d 426, 427, mot for lv to app den 45 NY2d 709). Order reversed, on the law and the facts, and petition dismissed, without costs. Mahoney, P. J., Greenblott, Sweeney, Kane and Herlihy, JJ., concur.