OPINION OF THE COURT
Irad S. Ingraham, J.
FINDINGS OF FACT
Martin E. Borst, Jr., was born September 5, 1979, to Tina Marie Palmer and Martin E. Borst, Sr. The natural father has by written instrument surrendered his interests to his son and consented to prospective adoption. At the time of the birth of Martin E. Borst, Jr., Tina was herself in foster care through Chenango County Department of Social Services and for the first five months of Martin’s life they lived together in the same foster home. On January 24, 1980, Martin was placed in a foster home separate from Tina’s.
Tina is of dull normal intelligence, with an IQ of 73. She has experienced problems both in the foster homes where placed, in school, and in her employment following discharge from foster care in March, 1980. The problems in the foster home involved rebellious conduct toward her *848 foster parents. In BOCES she was at times disruptive and was unable to assume responsibility. She did not graduate from high school. Since leaving school she has held three jobs but none longer than three weeks. Since discharge from foster care she has moved six times. The petitioner has encouraged her contacts with her child and she in turn has exercised visitation on 12 of the 17 visitations arranged. She has needed assistance in caring for Martin.
During the pendency of this petition, Tina was married to one Daniel Brown, who is a farm employee. He earns $120 weekly together with room and utilities. Tina is 21 years of age.
Tina asked to surrender Martin for adoption, but this was refused by her caseworker who felt she could manage the role of motherhood with guidance.
In August, 1980, the petitioner and Tina executed an agreement which the department claims she failed to fulfill, and which Tina claims she did not understand. The agreement outlined steps to be taken by Tina to prepare herself for the return of her son.
petitioner’s exhibit a
Tina’s mother, Rose Pierce, has filed a petition asking for an award of custody to her alleging that Tina wishes the grandmother to have custody of Martin.
The Law Guardian appointed to represent Martin recommends the granting of the petition of the Department of Social Services, suggesting that if it is denied, Martin should not be immediately returned to his mother until a sufficient time has passed to evaluate Tina’s capabilities as a mother.
CONCLUSIONS OF LAW
Unquestionably the record substantiates the conclusion of Martin’s Law Guardian in recommending a finding of permanent neglect, based upon a liberal interpretation of statute and the best interests of Martin. The natural mother has evinced a continuing pattern of instability in her contacts with her own foster parents, her school teachers and with the Department of Social Services. Al *849 though she has maintained contact with her son, she has failed to plan for Martin’s future. Indeed, there is some question whether she is mentally capable of such planning, although her IQ of 73 does not place her in the retarded range.
Confounding cases such as this, however, is the conflicting case opinion facing the trier of facts. In 1976, Judge Cooke, writing for a unanimous Court of Appeals reinforced legislative efforts in stating: “When the natural parent fails to accept the parental role, even though the result of shortcomings for which he or she may not be fully responsible, the ‘best interests’ of the child, the pivotal consideration underlying all of these proceedings, dictates that the right to custody be terminated.” (Matter of Orlando E., 40 NY2d 103, 111.) The Orlando boy was freed for adoption by his foster parents by Judge Cooke’s decision which permanently terminated his mother’s parental rights. The fact situations are strikingly similar: The mother was of dull normal intelligence. She kept some visits and missed others. She failed to follow the plans outlined for her by the Department of Social Services.
The Orlando determination was followed in the same year by Chief Judge Breitel’s decision which diluted the natural parent’s paramount right to custody as against a third person by adding the term “extraordinary circumstances” to existing exceptions which allowed a consideration of the best interests of the child in awarding custody. (Matter of Bennett v Jeffreys, 40 NY2d 543.)
The Court of Appeals specifically mandated application of the Jeffreys reasoning to permanent neglect proceedings (see Matter of Sanjivini K., 40 NY2d 1025).
Clearly, the best interests of the child had emerged from medieval case law which had placed it secondary to parental rights in custody cases. (Kropp v Shepsky, 305 NY 465.)
Then, in 1978, the Court of Appeals reversing the trend, cited Kropp v Shepsky (supra) as authority and stated: “A termination of parental rights is a drastic event indeed, so much so that it raises questions of constitutional dimen *850 sion”. (Matter of Corey L v Martin L, 45 NY2d 383, 392.) The case involved an adoption petition filed by the natural mother and stepfather and requesting that the consent of the natural father be dispensed with by virtue of his abandonment. Despite his failure to support his son for two years and but two to three visitations in that time, the court ruled the proof of abandonment was insufficient and reversed the order of adoption of the Family Court. The court determined (p 391) that the finding of abandonment must be a “purposeful ridding of parental obligations.” It further stated: “The best interests of the child, as such, is not an ingredient of that conduct and is not involved in this threshold question.” (Matter of Corey L v Martin L, supra, p 391.)
Perhaps no effort should be made to reconcile the Orlando and Corey decisions. They involve two separate legal mechanisms: one to terminate parental rights by a permanent neglect finding and the other to terminate parental rights by a finding of abandonment. Obviously, however, the end result is identical. Indeed, Judge Cooke noted in Orlando (40 NY2d 103, supra) that the purpose for termination of the natural mother’s rights was to effectuate an adoption by the foster parents. Already the differences have merged and the appellate courts have begun applying Corey (supra) to permanent neglect proceedings with disastrous effects upon the best interests of the child (see Matter of Suzanne N. Y., 66 AD2d 723). Perhaps most disturbing is the elevation of parental claims to constitutional status in the Corey decision. It is hard to believe that Judge Cooke authored both Orlando and Corey. He first advanced the constitutional authority in Corey which involved conflicting claims of father versus mother and stepfather. No government entity was a party. In upholding the right of the county to take permanent custody of a child away from the natural mother in Orlando, he made no reference whatsoever to her constitutional rights. Specific constitutional authority is omitted, but presumably the infant also possesses some constitutional rights. Both cases refer to the legislative intent in adopting legislation to elevate the rights of the infants affected by custody disputes. Orlando quotes from and *851 adheres to the statutory amendments while Corey refers to and rejects the legislation, stating: “Nevertheless, while accepting the change wrought by statutory law, this court has and must continue to respect constitutional limitations on the procedures for termination or deprivation of parental rights”. (Matter of Corey L v Martin L, supra, p 389.) The cases are inconsistent and unfortunately the inconsistency must in this instance react to the detriment of Martin. This court must apply the mandates of the Corey determination which is the more recent, and find that the proof adduced is insufficient to establish a permanent neglect absent the emphasis placed by the Law Guardian upon the child’s best interest. The mother has maintained contact with her son, and her failure to plan for his future has been of short duration. Her rights must be zealously guarded, and further opportunity given to her to show some initiative in planning for her son’s future. Accordingly the petition must be dismissed without prejudice.
The petition of Rose Pierce must also be dismissed as the evidence there fails to establish any pre-eminent right to the custody of Martin and further fails to establish a suitable environment for his upbringing.