OPINION OF THE COURT
Kathryn McDonald, J.
The court has before it petitions filed on September 17, 1980 to terminate the parental rights to four children on the grounds of abandonment and/or permanent; neglect. The children’s different circumstances require that they be dealt with separately.
Three of the children — Unido, James, and Arlynda — reside in an agency boarding home. The mother’s last visit with these children occurred on June 8, 1979, 15 months before the petition was filed. Subsequent visits were arranged at the mother’s request in August and December, 1979, and February, 1980 but she canceled each in turn. Her failure to visit the children is established, but the statute requires a failure both “to visit the child and communicate with the child or agency” (emphasis added) as a manifestation of the parent’s intent to forego parental rights (Social Services Law, § 384-b, subd 5, par [a]). An issue is raised as to whether a finding of abandonment is precluded when it is conceded that the mother telephoned the agency twice to make loud, angry threats to blow up the agency or to kill the caseworker if the children were not returned to her.
*1032 No language clarifying the reference in section 384-b (subd 5, par [a]) to communications with the, agency is contained in the statute. In contrast, section 384-b (subd 7, par [b]) of the Social Services Law which refers only to permanent neglect cases, provides that “insubstantial” contacts with a child will not bar a determination of permanent neglect. But as to abandonment, the only amplification of the elements of the charge is contained in section 384-b (subd 5, par [b]), which provides that: “The subjective intent of the parent, whether expressed or otherwise, unsupported by evidence of the foregoing parental acts manifesting such intent, shall not preclude a determination that such parent has abandoned his or her child.”
A telephone call is certainly a communication in the ordinary sense of the word. But where,.as here, the only statements made are threats of violence, the calls can only be viewed as spontaneous emotional outbursts, reflecting the caller’s frustration and rage. They are more an expression of subjective intent, or a verbalizing of inner fantasies, than a genuine communication with another person. The Court finds that the phone calls made by respondent fall under the restrictions of section 384-b (subd 5, par [b]), and do not bar a finding of abandonment.
The court notes also that the adoption law, section 111 of the Domestic Relations Law, incorporates in its provisions concerning abandonment language that parallels both subdivisions 7 and 5 of section 384-b of the Social Services Law, so as to provide that neither “insubstantial” contacts nor the parent’s “subjective intent” will preclude a determination of abandonment. The Court of Appeals has stated in a private adoption case that the statutory amendments “were designed to override the ‘flicker of interest’ test and thereby ease the burden on the party seeking to prove abandonment” (Matter of Corey L v Martin L, 45 NY2d 383, 389).
On the basis of clear and convincing evidence, this court concludes that the respondent mother abandoned Unido, Arlynda and James for at least six months. The failure to visit or communicate with these children since June, 1979 also constitutes permanent neglect pursuant to section 614 of the Family Court Act.
*1033 (The circumstances of the fourth child, Tanyika, and the legal issues with respect to her petition, are distinct, and do not require inclusion in this decision.)
As to the fathers of Arlynda, Unido and James (two of whom were served by name and one who was referred to and served only as “John Doe”) the court finds that no visits, communications, or offers of support were ever made. The putative fathers have abandoned their children, and any potential parental rights they might have been able to claim are forfeited.
Submit findings of fact and conclusions of law on notice. The court will consider the dispositional alternatives available to the three children, Arlynda, Unido and James, at a hearing to be held on June 17, 1981 in Part V.