■ In the Matter of MICHAEL PATRICK C. JOHN Z. et al., Appellants; MARY C. et al., Respondents. — In an adoption proceeding, petitioners appeal, as limited by their brief, from stated portions of an order of the Surrogate's Court, Nassau County (Bennett, S., at the hearing; Delin, S., on the order), dated December 15, 1980, which, *inter alia,* dismissed the petition for adoption and held section 111 (subd 1, par [e]) of the Domestic Relations Law to be unconstitutional "to the circumstances of this case". Order reversed insofar as appealed from, on the law and the facts, without costs or disbursements, petition for adoption reinstated and proceeding remitted to the Surrogate's Court, Nassau County, for further proceedings consistent herewith. The issue is whether the unwed father's preadoption consent was required. We conclude that it was not. The child in question, a boy, was born on September 29, 1979. By the time of his birth, Mary, the child's mother, had decided to place the infant for adoption. The infant left the hospital in the care of the prospective adoptive parents. Gabriel, the father of the child, had suggested an abortion when Mary told him in January, 1979 that she was pregnant. Mary testified that Gabriel made no offer to marry her; indeed, he was explicit that he would like to continue to see her — perhaps in an apartment she would set up for herself and the infant at her own expense — but he would not marry her. Although he controverted this testimony by stating that he did propose marriage, he contradicted that statement by saying he told Mary that he was saving money so that they could get married "at a later date." Gabriel attributed Mary's decision to reject him and to place the infant for adoption to Mary's mother, who was apparently hostile to him. What is determinative here, however, is that the father made no affirmative efforts to see the child nor to contact any agency or attorney for assistance in this regard. Moreover, Mary was an adult who did not need parental consent to marry. Her testimony was that had Gabriel proposed marriage, she would have accepted. Gabriel testified, contrary to Mary's testimony, that Mary did not tell him she had placed the child for adoption and that he first heard of the adoption when he was served in the proceeding. However, a copy of a letter dated October 12, 1979 and correctly addressed to Gabriel from the attorney of the adoptive parents indicated that the adoption was proceeding and asked him to contact the attorney. The record does not support the Surrogate's conclusion that the father was "brushed to the side" and his child virtually secreted from him. Rather, what is established is that the father decided to take affirmative steps — he contacted an attorney — only when he knew absolutely that the adoption was going forward. This was almost five months after the birth of the baby. Up to that time he had ignored the letter from the petitioners' attorney and had not sought any assistance to overcome his alleged claim of being kept from his child. This course of conduct is akin to abandonment and, had it continued for six months, might well be so adjudged (see Domestic Relations Law, § 111, subd 2, par [a]). Although abandonment is not made out, the father's consent is, nonetheless, not required. At the time of the decision in the present case, amendments to the Domestic Relations Law requiring the preadoption consent of an unwed father in certain circumstances were in effect and applicable (see *Matter of Corey L v Martin L,* 45 NY2d 383). The record is clear that Gabriel does not meet the

requirements. In *Matter of "Female" D.* (83 AD2d 933), we held that section 111 (subd 1, par [e]) of the Domestic Relations Law is constitutional. Inasmuch as the father does not meet the three criteria established by the amendment, to wit, he has not lived openly with the child or the child's mother for a continuous period of six months immediately preceding the placement of the child for adoption, he has not openly held himself out to be the father of the child during that period, and he has not paid a fair and reasonable sum in accordance with his means for medical, hospital and nursing expenses incurred in connection with the mother's pregnancy or with the birth of the child, his consent to the adoption is not required. The Legislature has determined, in response to *Caban v Mohammed* (441 US 380), that an unwed father must show that he has offered at least minimal support to the mother and child and created some semblance of a family unit before his consent will be required for the adoption of an infant placed for adoption before the age of six months. Where an unwed father has failed to provide this stability and support, as evinced by compliance with the requisite statutory criteria, it is in the interests of the infant, of the society in which the infant will live, and of the unwed mother, if she consents, to have the child adopted into a home where such stability and support will be provided. Gibbons, J. P., Gulotta, Cohalan and Bracken, JJ., concur.