(March 8, 1984)

■ In the Matter of the Adoption of AMY SS. ROBERT TT. et al., Respondents; RONALD SS., Appellant. — Appeal from an order of the Family Court of Columbia County (Zittel, J.), entered December 3, 1982, which dispensed with the necessity of consent of respondent natural father to the adoption of his child. ¶ The child who is the subject of this proceeding was born January 9, 1979. There were serious marital conflicts between the mother and natural father, with several separations and reconciliations following the child's birth. In early May, 1980, they separated for the final time when the father left the marital residence and moved to Berkshire County, Massachusetts, which adjoins Columbia County and is nearer to his place of employment. At that point, arrangements were made for the father to see his daughter at his mother's home in Columbia County when the child was brought to her on Sundays. A proceeding under the Uniform Support of Dependents Law (Domestic Relations Law, art 3-A) was brought by the mother in the summer of 1980 to obtain child support through the District Court of Massachusetts. An order was made by that court directing the father to pay $30 a week child support commencing August 29, 1980. No payments were made pursuant to that order except a payment of $10 in March of 1981 and two payments totaling about $160 in the latter part of June, 1981. In October, 1980, the parties were divorced. ¶ The mother remarried and, in June, 1981, she and her new husband petitioned for her husband's adoption of the child and then moved for an order dispensing with the necessity of the father's consent to the adoption. The sole ground for dispensing with respondent's consent was that he had evinced an intent to forego his parental rights and obligations as manifested by his failure for a period of more than six months to visit and communicate with the child (Domestic Relations Law, § 111, subd 2, par [a]). A fact-finding hearing was held in which the parties gave conflicting testimony as to the reasons for the father's failure to visit and pay support. According to him, after the parties separated in May, 1980, he saw the child several times at his mother's home, but was abruptly cut off after one occasion when he was two hours late for a scheduled visitation. He explained his failure to aggressively pursue his right to visit on the basis of a fear that if he did so, his wife would prevent his mother and grandmother from seeing the child. He also explained his failure to pay support because of having been fired from his job in September, 1980 and being unable to obtain anything but part-time employment until the following March. The mother of the child, on the other hand, testified that she did not seek to hinder the father's contact with the child after the separation until he had missed all but one of a number of weekly visitations over a period of almost two months and after having informed him, through his mother, that his erratic visitation was having a bad effect on the child and that he would have to be consistent or give up seeing her. ¶ We cannot agree with Family Court's determination that the statutory requirements for dispensing with the need for respondent's consent have been met. ¶ Section 111 of the Domestic Relations Law, which provides the authority to dispense with consent of a natural parent to an adoption, must be read along with the constitutional limitations on the termination of parental rights (see *Matter of Corey L v Martin L*, 45 NY2d 383). Though the legislative amendments to this statute (L 1976, ch 666, § 9; L 1975, ch 704, § 3) were intended to ease the burden imposed by the "flicker of interest" test, the Court of Appeals has held that, before the need for consent to adoption may be dispensed with, there must be a finding of abandonment (*Matter of Corey L v Martin L, supra*, pp 389-390). Under this analysis, a finding of insubstantial visitation does not

constitute abandonment, but simply does not necessarily preclude such a conclusion (*id.*). The failure of a natural parent to visit or pay support only constitutes abandonment where no credible explanation for the failure is found. ¶ Here, respondent offered proof that he failed to maintain contact with the child because his former wife hindered exercise of his visitation rights. In our view such evidence served to explain respondent's failure to visit the child (see *id.*, at p 390; *Matter of Cocozza v Antidormi*, 35 AD2d 810). As for respondent's failure to regularly pay support, such fact is significant, but not dispositive (*Matter of Corey L v Martin L, supra*, p 390). Here, as in *Corey L*, it appears that while respondent was receiving a regular income, such income was not substantial. Moreover, proof of the former wife's attempts to thwart visitation would be a factor to be considered in finding the failure to pay support to be excusable. ¶ Also, we note that while the time period evaluated in *Corey L* was only eight months, less than the time period involved in this proceeding, the Court of Appeals noted that even if the time in litigation was considered, such that a time span of two years was considered, abandonment could not be found based on the facts of that case (*id.*). ¶ In our view, the facts of this proceeding are similar to those of *Corey L*. While respondent's relationship with his child could have been more diligently pursued, petitioners have failed to satisfy the heavy burden of proving abandonment for the purpose of dispensing with the necessity for respondent's consent to the adoption (see *Matter of Lance David II v Sharon Cecilia HH*, 76 AD2d 1036, 1037). In this regard, we note, as did the Court of Appeals in *Corey L*, that petitioners seek more than custody; they seek to make the child their own (*Matter of Corey L v Martin L, supra*, p 391). ¶ Order reversed, on the law and the facts, without costs, and motion for an order dispensing with respondent's consent to the adoption denied. Mahoney, P. J., Casey and Weiss, JJ., concur.

Kane and Levine, JJ., dissent and vote to affirm in the following memorandum by Levine, J. Levine, J. (dissenting). We cannot agree with the majority's conclusion that, as a matter of law, petitioners have failed to prove that the natural father "evinced an intent to forego his parental rights and obligations as manifested by his failure for a period of more than six months to visit and communicate with the child (Domestic Relations Law, § 111, subd 2, par [a])". There is no dispute in the record that the father in fact did not visit nor directly communicate with the child for a period of almost 14 months, from early May, 1980 to late June, 1981. The appeal thus turns on whether this lengthy lapse of contact of more than twice the time required under the statute should be excused for some valid reason. As pointed out in the majority's decision, there was conflicting testimony by the natural father and mother on this issue. In our view, neither the Federal Constitution nor *Matter of Corey L v Martin L* (45 NY2d 383) mandates that such a factual dispute must, as a matter of law, be resolved in favor of one seeking to preserve his parental rights. ¶ Here, there were ample grounds in the record to reject the father's excuses for failing to visit and communicate. His claim that he was prevented from visiting the child by the child's mother after having only been late for one visit was refuted by (1) his concession that the child's mother informed him when they separated that she would not stand in the way of his relationship with the child, (2) his never even once having directly contacted his wife thereafter to reinstate visitation, and (3) his never responding in any way to her attorney's letter of July 1, 1980 advising him of his wife's willingness to permit visitation, but also pointing out that his failure to keep scheduled visits was having a bad effect on the child. Moreover, there is a total absence in the record of any excuse offered by him for failing to communicate via the telephone or by sending cards or gifts on the appropriate occasions of the child's birthday or holidays. ¶ Regarding the failure to pay support, respondent's excuse based upon financial inability was

belied by a letter he sent to his then current girlfriend during June, 1980, in which he stated that he was going to "save my money" for their future plans. Despite substantial periods during which he averaged over $150 a week and $110 a week in salary, respondent made only one $10 payment for support until mid-June, 1981. The payments thereafter appear to have been made in response to petitioners' attorney's informal contact before the adoption petition was filed, seeking his consent to the adoption. The father's nonsupport here during times when he had significant income and in violation of a court order bears little resemblance to the eight-month period of nonsupport in *Matter of Corey L v Martin L* (*supra*), where the father previously had furnished regular support while in the military service and only earned $80 a week during the period of default. Respondent here never furnished any significant financial aid to his child until he was threatened with the possible termination of his parental rights. ¶ Nor were there in the record here the genuine ambiguities found in *Matter of Corey L* as to whether the child's mother prevented visitation. There was nothing ambiguous in the last communication to the father on the mother's behalf through her attorney's letter, explicitly offering him visitation, to which the father never responded. In further expressing that scheduled visits should be regular and consistently kept in order to avoid detriment to the child, the mother was attempting to encourage, not discourage, a meaningful parent-child relationship. In the face of this evidence, respondent's explanation that he refrained from seeking visitation in reliance on information that he received from his mother and upon advice of a Massachusetts probation officer that under *Massachusetts* law he could not visit while in default in support payments is the kind of weak excuse for absence of visits or communication rejected in *Matter of Donald U.* (91 AD2d 1152) and *Matter of Michael E. J.* (84 AD2d 816). The father's excuse amounted to nothing more than an after-the-fact expression of subjective intent not to abandon which, under the statute, is insufficient to preclude a determination that the consent of the parent to an adoption shall not be required (Domestic Relations Law, § 111, subd 6, par [c]). ¶ The majority's rejection of all of the foregoing perfectly legitimate, objectively supportable inferences of an actual abandonment here appears to be nothing more than a reversion to the discredited, legislatively overruled subjective "flicker of interest" standard to defeat termination of parental rights (*Matter of Susan W. v Talbot G.*, 34 NY2d 76). Since the record contains a more than sufficient factual basis satisfying the statutory requirements for dispensing with parental consent, we would affirm.