In the Matter of M. KATHLEEN H. et al., Respondents; GARY S., Appellant. (Proceeding No. 1.) In the Matter of J. KATHLEEN H., et al., Respondents; GARY S., Appellant. (Proceeding No. 2.) [833 NYS2d 248]—

In related adoption proceedings pursuant to Domestic Relations Law article 7, the father appeals from an order of the Family Court, Dutchess County (Amodeo, J.), dated December

2, 2005, which, without a hearing, granted the petitioners' motions for summary judgment on the petitions and determining that the father's consent to the adoption of the subject children was not required.

Ordered that the order is reversed, on the law, without costs or disbursements, the petitioners' motions for summary judgment on the petitions and determining that the father's consent to the adoption of the subject children was not required are denied, and the matters are remitted to the Family Court, Dutchess County, for a hearing and determination on the petitions in accordance herewith.

At issue here is whether the Family Court properly determined, without a hearing, that the father's consent to the private-placement adoption of his nonmarital children born in April 1997 and June 1998 was not required pursuant to Domestic Relations Law § 111 (1) (d) and (2) (a).

Prior to July 2002, the father resided with the biological mother of the subject children in Massachusetts. In July 2002 the biological mother complained that the father abused her. The father denied that allegation. The Department of Social Services in Massachusetts intervened and developed a service plan to stabilize the intact family.

In the spring of 2003, custody of the subject children was awarded to the father. The father claimed that he experienced difficulties in caring for the children because he worked nights and cared for the children during the day, he suffered from a thyroid condition, his mother became ill, and his sister-in-law was unwilling to help because she was being harassed by the biological mother.

In August 2003 the biological mother's sister and her husband (hereinafter the proposed adoptive parents) were awarded guardianship of the children. The proposed adoptive parents live in New York. In November 2003 the father petitioned in Massachusetts for visitation with the children. An order granting visitation on the second weekend of each month was initially entered and then vacated on motion of the proposed adoptive parents.

In February 2004 the father petitioned in Massachusetts to change the children's guardians to a paternal aunt and uncle and for unsupervised visitation. Also in February 2004 the proposed adoptive mother filed a family offense petition in New York, alleging that the father telephoned the biological mother and threatened the proposed adoptive parents. The father, claiming New York had no jurisdiction, failed to appear in the family offense proceeding, and a temporary order of protection was issued upon his default.

After a trial in Massachusetts, the father's petition to change the children's guardians and for unsupervised visitation was denied. In its decision, the Massachusetts court noted that while the children were in the father's custody in 2003, he "kept them well dressed, cooked them meals, enrolled them in community and social activities including swimming lessons at the YMCA, and provided them with educational tools and media." The petition was denied, however, on the grounds that the proposed adoptive parents provided a stable home for the children and the children feared their father. The order of the Massachusetts court directed the proposed adoptive parents to provide the father with the name and address of the children's therapist in New York and granted the father the right to contact the therapist.

On December 7, 2004 the father telephoned the child's therapist. The therapist noted, in an affidavit, that the father stated he loved his children and believed they loved him but he thought the children were being brainwashed. According to the therapist, the father "wanted to come tell his side of the events." The therapist suggested that he seek counseling near his home in Massachusetts.

The father claims that he and his family sent gifts to the children at Christmas which were refused. In March 2005 the father petitioned in Massachusetts for visitation. The Massachusetts court declined jurisdiction on the ground that the children had resided in New York since August 2003.

On May 10, 2005 the proposed adoptive parents filed a family offense petition pursuant to Family Court Act article 8 in the Family Court, Dutchess County, based upon allegations of a verbal confrontation between the father and the proposed adoptive mother after a court appearance in Massachusetts relating to his visitation petition. An ex parte temporary order of protection was issued that same day, directing the father, inter alia, to "[r]efrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other means" with the children. By petitions dated June 9, 2005, the proposed adoptive parents sought orders of adoption.

The biological mother defaulted in the adoption proceedings. The father defaulted in the family offense proceeding, and a permanent order of protection was issued, effective until June 17, 2007. However, the father appeared in the adoption proceeding and was assigned counsel upon proof of indigency.

By notices of motion dated October 7, 2005, the proposed adoptive parents moved for summary judgment on the petitions and determining that the father's consent to the adoption was

not required pursuant to Domestic Relations Law § 111 (1) (d) and (2) (a). In opposition, the father's counsel contended that the father was indigent and his efforts to communicate with his children were "thwarted at every turn by unsubstantiated allegations of abuse." The father's counsel further alleged that a family service officer assigned to investigate allegations of abuse in Massachusetts found no evidence of abuse.

In the order appealed from, the Family Court granted the motions of the proposed adoptive parents. The court determined, without an evidentiary hearing, that the father's consent to adoption was not required on the ground that the father failed to provide support and failed to appear in court and oppose entry of the order of protection "which precluded him [from] having contact with the children." The court further found that an investigation by the Dutchess County Department of Social Services "conclude[d] that the children were sexually and physically abused by the father" and were victims of "severe abuse and neglect."

In relevant part, Domestic Relations Law § 111 (1) (d) requires the father's consent to the adoption "of a child born out-of-wedlock and placed with the adoptive parents more than six months after birth, but only if such father shall have maintained substantial and continuous or repeated contact with the child as manifested by: (i) the payment by the father toward the support of the child of a fair and reasonable sum, according to the father's means, and either (ii) the father's visiting the child at least monthly when physically and financially able to do so and not prevented from doing so by the person or authorized agency having lawful custody of the child, or (iii) the father's regular communication with the child or with the person or agency having the care or custody of the child, when physically and financially unable to visit the child or prevented from doing so by the person or authorized agency having lawful custody of the child." Failure to furnish support is not determinative if it is explained (see Matter of Corey L. v Martin L., 45 NY2d 383, 390 [1978]; Matter of Madeline S., 3 AD3d 13 [2003]).

Consent may also be dispensed with based upon a father demonstrating an intent to forego parental rights by failing to communicate with the child or the child's legal custodians for a period of six months, "although able to do so" (Domestic Relations Law § 111 [2] [a]).

The record indicates that there were several potential explanations for the father's failure to provide support. The father contends that he is indigent and his attempts to send gifts to the children were refused by the proposed adoptive parents.

Further, the father was precluded from communicating with the children by the proposed adoptive parents and the express terms of an order of protection which precluded him from contacting the children by telephone or by letter or any other means (*see Matter of Adonis Earl S.*, 14 AD3d 614 [2005]; *Matter of Ronald D.*, 282 AD2d 533 [2001]; *Matter of Clair*, 231 AD2d 842 [1996]). Since this was a private placement adoption, he could not maintain contact through a foster care agency (*see Matter of Ronald D., supra*). His default in the family offense proceedings can be explained by the fact that he was indigent, without counsel, and faced difficulties in navigating the legal system from out-of-state and between two jurisdictions. Thus, in light of this record, an evidentiary hearing is warranted on whether the father's consent to adoption is required pursuant to Domestic Relations Law § 111 (1) (d).

Moreover, it is apparent from this record that the father did not intend to forego his parental rights. Therefore, his consent could not be dispensed with pursuant to Domestic Relations Law § 111 (2) (a).

It should also be noted that the determination of the Family Court was influenced by a conclusion of the Dutchess County Department of Social Services that "the children were sexually and physically abused by the father." However, the father was never the subject of a proceeding to terminate his parental rights based upon abuse and/or permanent neglect.

In view of the foregoing, the Family Court erred in granting the petitioners' motions for summary judgment without holding an evidentiary hearing on the issue of whether the father's consent to the adoption is required pursuant to Domestic Relations Law § 111 (1) (d). Schmidt, J.P., Goldstein, Fisher and Lifson, JJ., concur.