Matter of Jason TT. v Linsey UU. (2025 NY Slip Op 04067)

Matter of Jason TT. v Linsey UU.

2025 NY Slip Op 04067

Decided on July 3, 2025

Appellate Division, Third Department

Lynch, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 3, 2025

CV-24-1724

[*1]In the Matter of Jason TT., Respondent.
v
Linsey UU., Appellant.

Calendar Date:May 29, 2025

Before: Garry, P.J., Clark, Lynch, Reynolds Fitzgerald and McShan, JJ.

Thomas G. Shannan, Ithaca, for appellant.
Christopher Hammond, Cooperstown, for respondent.

Lynch, J.
Appeal, by permission, from an order of the Family Court of Tompkins County (Joseph Cassidy, J.), entered October 11, 2024, which, in a proceeding pursuant to Family Ct Act article 6, denied respondent's motion to dismiss the petition.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of the subject children (born in 2016 and 2018). In January 2022, Family Court issued a consent order awarding the father sole legal and physical custody of the children, with a graduated schedule of parenting time for the mother.
In July 2023, the father, acting pro se, filed an order to show cause and an accompanying petition under Family Ct Act article 6 seeking a temporary "suspension" of the mother's visitation and "to have all visitation and . . . the removal of [her] parental rights [because of] 'abandonment,' "[FN1] alleging that the mother had failed to contact him in over a year and that his paramour wanted to adopt both children. Upon issuing the order to show cause, Family Court suspended the mother's visitation. During the initial appearance in September 2023, at which both parties appeared without counsel, the father explained that he was seeking to have the mother's parental rights terminated in order to free the children for adoption by his paramour. The attorney for the children (hereinafter AFC) supported the father's request to suspend the mother's visitation, but otherwise took no position on the relief requested. Family Court continued the suspension of the mother's visitation and adjourned the matter to enable the parties to obtain counsel.
All parties were present with counsel for the next appearance in October 2023. During that appearance, the father's attorney stated that he "belie[ved]" the father had filed the wrong petition and that an adoption petition should have instead been filed by the paramour on the basis of abandonment. Counsel explained that once the adoption petition was filed in Surrogate's Court, the subject petition would be withdrawn. Family Court adjourned the matter accordingly.
In January 2024, the father formally moved to convert the subject petition into an adoption petition by the paramour, to be considered nunc pro tunc to the filing of the original petition. In his supporting affidavit, the father reiterated that "[w]hen [he] filed the Order to Show Cause and modification petition, it was . . . for [the] purpose . . . to file a petition to remove [the mother's] parental rights because she had abandoned [the children] for over a year," and to free them for adoption by the paramour. The mother opposed the motion. The AFC supported the proposal to convert the modification petition into an abandonment petition, stating that the father had "stepped into the shoes" of the Department of Social Services for the purpose of filing a termination of parental rights proceeding on the basis of abandonment.
By decision and order entered March 11, 2024, Family Court denied the father's motion[*2], stating that it could not "construe the [p]etition as an adoption petition, as [it] lacks several essential elements of an adoption petition" and the paramour, not the father, would be the proper petitioner in such a proceeding. As for terminating the mother's parental rights on the basis of abandonment, the court stated it could not grant such relief "outside of an agency [Family Ct Act] [a]rticle 10 proceeding brought by the State," but it could "hear evidence and make findings that may prove abandonment" in the context of the modification proceeding seeking to suspend the mother's visitation rights. The court opined that "Family Court is the more appropriate forum for a hearing on the threshold issues," while observing "that [t]he Surrogate could take judicial notice of Family Court's factual findings, providing all parties have had an opportunity to participate." The court stayed the proceedings pending confirmation that an adoption petition was filed in Surrogate's Court, at which time it would "schedule a fact-finding hearing on the allegations of a change in circumstances, including abandonment, and the best interests of the children, if needed."
The father's paramour filed adoption petitions in Surrogate's Court in June 2024. Thereafter, the mother — represented by new counsel — moved to dismiss the pending Family Court petition, emphasizing that the father had conceded that the modification petition was actually one seeking termination of her parental rights on the ground of abandonment, and that the father lacked standing to originate a termination of parental rights proceeding. By decision and order entered October 11, 2024, Family Court noted that it had already determined that the father lacked standing to bring a termination proceeding in its prior order, but declined to dismiss the petition, finding that, "as a practical matter, Family Court is the more appropriate forum for a hearing" on the abandonment issue. In so holding, Family Court mistakenly reasoned that the mother would not have assigned counsel to represent her interests in Surrogate's Court. To the contrary, the Surrogate is required to assign counsel to "the parent of a child in any adoption proceeding who opposes the adoption of such child" when that parent is financially unable to retain counsel (SCPA 407 [1] [a] [iii]). The mother, by permission of this Court, appeals from the October 2024 nondispositional order denying her motion to dismiss (see Family Ct Act § 1112 [a]).[FN2]
We begin by emphasizing that Family Court and Surrogate's Court each have jurisdiction over adoption matters (see Domestic Relations Law article VII; Family Ct Act § 641; NY Const, art 6, §§ 12 [d]; 13 [b] [3]). An adoption may result from a termination proceeding initiated by an authorized agency as defined under the Social Services Law (see Domestic Relations Law § 109 [4]; Social Services Law §§ 383-c, 384-b). An adoption proceeding may also be initiated by "[a]n adult unmarried person, an [*3]adult married couple together, or any two unmarried adult intimate partners together" under Domestic Relations Law § 110.
In reviewing a prehearing motion to dismiss, the general rule is that "Family Court must liberally construe the petition, accept the facts alleged in the petition as true, afford the petitioner the benefit of every favorable inference and resolve all credibility questions in favor of the petitioner" (Matter of Matthew TT. v Erin TT., 222 AD3d 1242, 1243 [3d Dept 2023] [internal quotation marks and citations omitted]). In addressing the mother's motion to dismiss, however, Family Court also needed to take due account of the clarifications made by both the father and his attorney as to the purpose of this petition. The father initiated this proceeding, by his own account, to terminate the mother's parental rights and to facilitate the adoption of the children by his paramour. As Family Court correctly held, the father was neither authorized to initiate proceedings to terminate the mother's parental rights (see Social Services Law § 384-b [3] [b]; Matter of Cadence SS., 103 AD3d 126, 128 [3d Dept 2012], lv denied 21 NY3d 853 [2013]), nor the proper party to initiate an adoption proceeding on the paramour's behalf.
The operative point now is that the paramour has initiated adoption proceedings in Surrogate's Court on the basis of the mother's abandonment of the children for a period of six months (see Domestic Relations Law § 111 [2] [a]). As Family Court observed, "the Surrogate would have to determine identical issues and allegations as to whether the mother abandoned the children." In doing so, the Surrogate will be governed by the evidentiary criteria for an abandonment outlined in Domestic Relations Law § 111 (6)
(a-d). By comparison, these same statutory criteria do not expressly apply to a custody modification proceeding. It bears further emphasis that "[a]bandonment, as it pertains to adoption, relates to such conduct on the part of a parent as evinces a purposeful ridding of parental obligations and the foregoing of parental rights — a withholding of interest, presence, affection, care and support" (Matter of Corey L. v Martin L., 45 NY2d 383, 391 [1978]).
Given that the focus of this entire matter is on the issue of adoption, we conclude that the appropriate course is for the Surrogate to determine the question of abandonment.[FN3] To have this question addressed on parallel tracks in both Family Court and Surrogate's Court would be both unnecessary and prejudicial to the interests of the parties, particularly given that the paramour is not a party to the Family Court proceeding. As such, the mother's motion to dismiss the petition should have been granted. In so holding, we recognize that the mother's visitation rights have been suspended since the issuance of the Order to Show Cause on July 28, 2023, but that directive concludes with the dismissal of the father's petition.[FN4]
Garry, P.J., Clark, Reynolds Fitzgerald and [*4]McShan, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, and respondent's motion to dismiss the petition granted.

Footnotes

Footnote 1: The petition was entitled "Abandonment Petition for Modification of Order of Custody," with the word "Abandonment" handwritten by the father before the preprinted terms on the form.

Footnote 2: Simultaneously with the grant of permission to appeal, this Court also granted the mother's application to stay the Family Court proceedings pending the appeal.

Footnote 3: During oral argument, counsel advised that the Family Court judge here has also been assigned to handle the adoption petition in Surrogate's Court. Given the circumstances of this case, it is our view that the matter in Surrogate's Court should be assigned to a different judge.

Footnote 4: In the adoption case pending before Surrogate's Court, the presumption set forth in Domestic Relations Law § 111 (6) (a) — that the mother was able to visit and communicate with the children in the six months prior to the filing of the adoption petition by the paramour — should not apply to any period in which her visitation rights were suspended.