■ In the Matter of ANDREW PETER H. T., an Infant. TIMOTHY DE V. et al., Appellants; MARK T., Respondent. — In a private placement adoption proceeding, the petitioners appeal from an order of the Family Court, Dutchess County (Bernhard, J.), dated February 22, 1983, which dismissed the petition. ¶ Order affirmed, with one bill of costs to respondent and the Attorney-General. ¶ The single issue on this appeal is whether the prospective adoption could be consummated without the biological father's consent, or proof that he abandoned his parental obligations. We conclude that the biological father's consent was necessary according to the principles enunciated by the United States Supreme Court in *Lehr v Robertson* (463 US ___, 103 S Ct 2985) and *Caban v Mohammed* (441 US 380) and the statutory criteria set forth in section 111 (subd 1, par [d]) of the Domestic Relations Law. Since the natural father refused to consent voluntarily and there was insufficient proof to establish that

he intended to forego his parental obligations (see Domestic Relations Law, § 111, subd 2, par [a]), the Family Court properly dismissed the petition for adoption. ¶ The present controversy arose because the child's biological parents were never married. The parents began living together in the fall of 1974 while they were both attending Vassar College in Poughkeepsie, New York. In essence, the couple lived as husband and wife in a "monogamous" relationship for more than five years. When the child was born his natural father was present in the delivery room. The natural father was acknowledged on the birth certificate. ¶ The record indicates that the father made a genuine commitment to the family and assumed his parental obligations to the child. The family moved to California in March or April, 1978, where the father attended graduate school and earned a small income on a work-study program, which he contributed to the family's support. In June, 1979, the parents separated. The mother moved into a separate apartment with the child. The parents attempted a reconciliation but after a second separation, the mother decided to move back to New York, leaving the father in California. Mother and son finally settled back in Poughkeepsie. The mother married her present husband in June, 1982, and together, they applied to adopt the child. ¶ After the final separation in California, the father maintained frequent and continuous telephone communications with the mother and his son. His financial condition precluded regular visitation but when he did fly back to New York to visit his son in May, 1982, the mother refused to allow the visit. The father never offered support after the final separation, but he did send an occasional gift to his son. ¶ We do not condone the father's failure to pay support, but because of his relatively poor financial condition, we do not consider such conduct conclusive evidence of his intent to forego his parental obligations (see Matter of Corey L v Martin L, 45 NY2d 383, 392). This is especially true because of the mother's conduct, making it burdensome for the father to enjoy his son's company (cf. Strahl v Strahl, 66 AD2d 571, affd 49 NY2d 1036; Matter of Amy SS., 100 AD2d 657). The statutory criteria of section 111 (subd 1, par [d]) of the Domestic Relations Law preclude an absentee biological father from frustrating attempts to place a child born out of wedlock for adoption which is in his or her perceived best interest, but the statute requires the consent of both parents who were integral parts of a de facto family (see Matter of "Female" D., 83 AD2d 933). Under the circumstances described in this record, the father's contact with the child was sufficient to require his consent to adoption (see Domestic Relations Law, § 111, subd 1, par [d]; Lehr v Robertson, 463 US __, 103 S Ct 2985, supra; Caban v Mohammed, 441 US 380, supra; Matter of Robin U., 106 Misc 2d 828, 831). Titone, J. P., Lazer, Thompson and O'Connor, concur.