■ In the Matter of SAMANTHA B. LEON B., Appellant; HELEN A. Y. et al., Respondents. — In an adoption proceeding, the natural father appeals from an order of the Surrogate's Court, Queens County (Laurino, S.), dated June 16, 1983, as resettled by an order of the same court dated August 23, 1984, which, after a hearing, determined that his consent to the adoption of his child was not required since he had abandoned the child.

Order, as resettled, reversed, on the law and the facts, without costs or disbursements, application to dispense with appellant's consent to the adoption denied, and matter remitted to the Surrogate's Court, Queens County, for further proceedings consistent herewith.

The appellant father and his former wife were married on April 1, 1972. Samantha, the child, was born on May 16, 1974. By judgment dated February 18, 1976, the marriage was dissolved, and pursuant to the divorce decree, custody of Samantha was awarded to her mother, visitation rights were granted to appellant, and appellant was required to pay alimony and child support. The period following the divorce was marked, as the Surrogate noted by "acrimony * * * bitterness * * * [and] numerous judicial proceedings", with the mother moving seven times to enforce support payments, appellant moving at least three times to enforce visitation rights, both parties being found in contempt of court, and the mother even preferring criminal charges against appellant for trespassing, assault and harassment.

On April 25, 1982, the mother died and shortly thereafter, on or about August 3, 1982, her cousins, petitioners herein, cited appellant to show cause why his consent to adopt Samantha should not be dispensed with on the ground that he had abandoned, deserted and failed to support his daughter (see Domestic Relations Law, § 111). Following a hearing, the Surrogate's Court concluded that appellant had abandoned Samantha and that his consent to petitioners' proposed adoption was unnecessary. We disagree with this determination and, accordingly, reverse.

Section 111 (subd 2, par [a]) of the Domestic Relations Law provides that a parent's consent to adoption is not necessary where the parent "evinces an intent to forego his or her parental * * * rights and obligations as manifested by his or her failure for a period of six months to visit the child and communicate with the child * * * although able to do so".

It is not subject to dispute that since the time of the divorce decree, appellant actively and formally sought recognition of his visitation rights on three occasions; on the third occasion, the mother was found in contempt for failing to comply with the visitation provisions of the divorce decree. Thereafter, as the Surrogate found, appellant visited or attempted to visit his daughter every weekend for a nine-month period until May, 1979 when the mother had him arrested, as previously indicated, for trespassing, assault and harassment. Appellant was directed to refrain from further contact until the criminal charges were resolved; some seven months later, the harassment charge was sustained but the others were discharged.

Concededly, the last occasion appellant spent time with Samantha was early in 1980, when Special Term, in the course of a proceeding, permitted visitation in chambers. Nevertheless, appellant testified at the hearing that he thereafter wrote a letter to the Judge complaining of the mother's continued refusal to permit visitation (the letter being admitted in evidence). He further testified that he was afraid to enforce his visitation rights after the mother became ill, had been refused Samantha's unlisted telephone number by the mother, "used to go to [Samantha's] neighborhood and see her" from afar, sent Samantha presents and cards on special occasions (one unclaimed card sent certified mail being admitted in evidence) and unsuccessfully sought to restore visitation rights after the mother's death.

Furthermore, it cannot be disputed that for a period of almost four years prior to the commencement of the instant proceeding, appellant mailed the mother weekly child support checks, which were also admitted in evidence. Admittedly, these payments

were not in the amount established by court order. Nonetheless, they were generally only $20 short of the court-ordered child support payments — which, if remitted in full, would have *ipso facto,* as a matter of law, precluded a finding of abandonment (see Domestic Relations Law, § 111, subd 6; *Matter of Michael E. J.,* 84 AD2d 816) — and most pointedly these payments were constant and unwavering.

In view of the history of litigation between appellant and the mother, his attempts to enforce his visitation rights, his exercise of those rights for nine months, his mailing of gifts and cards and his consistent (albeit deficient) contributions to his child's support, we cannot say the record demonstrates that petitioners have carried their heavy burden of establishing conduct on the part of appellant which "evinces a purposeful ridding of parental obligations and the foregoing of parental rights — a withholding of interest, presence, affection, care and support" (*Matter of Corey L v Martin L,* 45 NY2d 383, 391; see, also, *Matter of Abraham L.,* 53 AD2d 669). This seems particularly so inasmuch as "[t]he filial bond is one of the strongest, yet most delicate, and most inviolable of all relationships" and "[a] termination of parental rights is a drastic event indeed, so much so that it raises questions of constitutional dimension" (*Matter of Corey L v Martin L, supra,* p 392; see, also, *Matter of Goldman,* 41 NY2d 894; *Matter of Lance David II v David II,* 76 AD2d 1036; *Matter of Cocozza v Antidormi,* 35 AD2d 810).

Accordingly, the order of the Surrogate's Court determining appellant's consent for adoption to be unnecessary should be reversed. Titone, J. P., O'Connor and Lawrence, JJ., concur.

Boyers, J., dissents, and votes to affirm the order appealed from, with the following memorandum, in which Thompson, J., concurs: A parent's obligation to a child is founded upon a substantial duty that requires affirmative performance (see *Matter of Joseph LL,* 63 NY2d 1014, affg 97 AD2d 263). Given such duty, I would hold that the record in this case discloses sufficient evidence upon which to affirm the Surrogate's finding that the appellant natural father has in fact abandoned all obligations and responsibilities of parenthood, and accordingly, his consent to adoption is not necessary (see Domestic Relations Law, § 111, subd 2).

The Surrogate's finding that appellant has neither seen nor spoken to his now 10-year-old daughter since June, 1980, and that for a period of two years made no effort to inquire about his daughter at her school or with her family doctor is sufficient, under the particular circumstances of this case, to justify a finding of abandonment (see *Matter of Corey L v Martin L,* 45 NY2d 383, 389).

The only explanation offered by appellant for his failure to exercise his right of visitation was that in the spring of 1980, he heard that his former wife, with whom their child resided, was terminally ill with cancer and he "thought it best to stay away from her". As the Surrogate observed, "[t]his reaction makes no sense". A concerned father would undoubtedly have recognized that given such tragic circumstances, his daughter would more than ever need the moral and psychological support of his presence. Further, the record is bereft of proof that after June, 1980 appellant was prevented from seeing his daughter or that his former wife had moved or secreted the child at a location unknown to him. Indeed, to the contrary, the evidence reveals that until her death, appellant's former wife and child resided in the same apartment which had served as the family home before the parents' divorce.

It is beyond cavil that where "close issues of fact are presented, the Surrogate's appraisals of credibility and resolution of those issues are entitled to great weight on appeal" (*Matter of Anonymous,* 81 AD2d 865, 866; *Matter of Gloria S. v Richard B.,* 80 AD2d 72, 76; *Matter of Gardner v Roddy,* 71 AD2d 1040, 1041; *Tomaino v Tomaino,* 68 AD2d 267, 269), and in my view, the Surrogate's finding that appellant abandoned the child was not against the weight of the evidence (see *Matter of Anonymous, supra*).

Appellant would persuade this court that his payment of $25 per week for support sufficed to constitute substantial communication under section 111 (subd 6, par [d]) of the Domestic Relations Law. I cannot agree. The Legislature, in enacting paragraph (d) of subdivision 6 of section 111 of the Domestic Relations Law, could not have intended that a father who is literally dragged to the support table, and who violates several orders requiring the payment of a fair and reasonable sum, has thereby established substantial communication (see *Matter of Michael E. J.,* 84 AD2d 816). Here, the record reveals that appellant was held in contempt on several occasions, both prior to 1978 and thereafter, for his failure to comply with court orders of support. In fact, he has continuously ignored this court's orders of support and the mere fact that he has paid a sum of his own choosing instead cannot be deemed a substantial communication under the circumstances (see *Matter of Michael E. J., supra*).

Appellant's complete failure to exercise his right of visitation during the two years prior to commencement of the instant proceeding, a most critical period for his child, along with the other evidence adduced at the hearing, clearly and convincingly

evidenced an intent to forego all parental rights and obligations and constituted "a withholding of interest, presence, affection, care and support" (*Matter of Corey L v Martin L,* 45 NY2d 383, 391, *supra*). Accordingly, I concur with the Surrogate's finding that appellant abandoned the child within the meaning of section 111 of the Domestic Relations Law.