■ HAL E. KAPLAN et al., Appellants, v DAVID E. MESKIN, Respondent. — In an adoption proceeding and a matrimonial action wherein respondent father sought enforcement of the visitation provisions of a separation agreement, the mother and her new husband appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Nassau County (Widlitz, J.), entered October 20, 1983, as, pursuant to an order dated May 12, 1982, removed the adoption proceeding from the Surrogate's Court, Nassau County, and consolidated it with the motion pending in the Supreme Court, Nassau County, denied an application to dispense with the father's consent to a proposed adoption, granted the father specific visitation with the child, and awarded appellant mother only $7,700 in arrears of child support.

Judgment modified, on the facts, by increasing the sum of accrued child support payments from $7,700 to $8,020. As so modified, judgment affirmed, insofar as appealed from, without costs or disbursements.

The appellant mother was married to the respondent father on November 4, 1973. Their one child, Scott, was born on December 1, 1976. The mother and respondent entered into a written separation agreement on June 8, 1979 and were divorced by judgment of the Supreme Court, Nassau County, dated July 28, 1980. The provisions of the separation agreement survived the divorce decree.

On August 31, 1980, the appellant mother married appellant Hal Edward Kaplan and moved, with Scott, into Mr. Kaplan's residence in Syosset. Appellants filed a petition for the adoption of Scott, dated July 24, 1981, in the Surrogate's Court, Nassau County. It was alleged in the petition that the consent of respondent father was unnecessary because he abandoned the child as of July 1980. Subsequently, respondent moved by order to show cause in the Supreme Court, Nassau County, for an order enforcing the visitation provisions of the separation agreement. Respondent's order to show cause, signed by Justice Di Paola on March 17, 1982, contained a provision barring the mother from prohibiting visitation during the pendency of the application. On or about March 23, 1982, the mother moved, by an order to show cause, signed by Justice Burstein, for curtailment and suspension of any visitation pending a determination of the adoption proceeding, seeking to hold respondent in contempt of court for failing to pay child support, seeking to consolidate the motion in Supreme Court with the adoption proceeding

pending in Surrogate's Court, and finally, seeking an award of counsel fees.

By order dated May 12, 1982, Justice Murphy directed that the adoption proceeding in the Surrogate's Court be consolidated with the proceedings in the Supreme Court. The matter was set for a hearing, as the submitted papers were "replete with factual issues".

At the hearing, the mother presented a portrait of respondent as being a man who had virtually no interest in his son, and who, despite her repeated requests, chose to have little, if any, contact with Scott. Further, she asserted that child support payments during the period of July 1980 until July 1981 were nonexistent.

Respondent, on the other hand, testified that he was always concerned with his son's well-being. He indicated that his repeated attempts to visit with Scott were thwarted by the mother, that he was not permitted to see Scott, and was not permitted to speak to Scott on the telephone. He testified that he sent Scott a birthday card every year and, on one occasion, left a gift for Scott with the mother's sister. When he attempted to telephone appellants' residence, the mother repeatedly hung up on him and disconnected the telephone line. As to child support payments, respondent admitted that he was in arrears, but testified that he had provided cash payments on a few occasions. The only support payments subsequent to the divorce which respondent was able to verify were the receipts from eight certified checks for $50 each, all sent shortly after the proceeding for adoption was brought.

In the judgment appealed from, entered October 20, 1983, the application to dispense with the father's consent to the proposed adoption was denied, it being found that abandonment had not been established. The court instituted a specific schedule of visitation and awarded the mother the sum of $7,700 as and for accrued support payments, calculated at the rate of $50 per week for 154 weeks. The sum of $1,000 was awarded for counsel fees.

After reviewing the record, we are unable to say that Special Term erred, as a matter of law, in concluding that the father had not abandoned Scott within the meaning of Domestic Relations Law § 111 (2) (a). There is a heavy burden placed upon one who seeks to terminate the rights of a natural parent through adoption (see, Matter of Corey L v Martin L, 45 NY2d 383). A finding of abandonment must be the product of "such conduct on the part of a parent as evinces a purposeful ridding of parental

obligations and the foregoing of parental rights" (*Matter of Corey L v Martin L, supra,* p 391). Special Term apparently credited, as we do now, the testimony of respondent that appellant mother was uncooperative in his attempts to maintain continuing contact with Scott. In view of the opposition which respondent faced, the facts, when fairly considered, do not support a finding of abandonment.

As to the question of whether it was proper for the Supreme Court to consolidate the proceedings pending before it with the proceeding pending in the Surrogate's Court, we find no error. Family Court Act § 641 may not be read as curtailing the subject jurisdiction of the Supreme Court, and we now hold that the Supreme Court shares concurrent jurisdiction over adoption proceedings with the Surrogate's Court and the Family Court. To hold otherwise might very well violate the provisions of our State Constitution which enumerate the powers and jurisdiction of each of the courts within the State system (*see,* NY Const, art VI, § 7; *Kagen v Kagen,* 21 NY2d 532; Siegel, NY Prac, § 16, at 19; *see also,* NY Const, art VI, § 13 [d]; *Sementilli v Sementilli,* 102 AD2d 78).

Finally, we agree with appellants that the calculation of the arrears in the child support payments was erroneous. The separation agreement provided that child support was to be in the sum of $50 per week until the child's sixth birthday, at which time the support was to increase to the sum of $60 per week.

The judgment of Special Term was for $7,700, which represented back child support for 154 weeks, up until July 12, 1983, at the rate of $50 per week. Scott's sixth birthday was on December 1, 1982. Thus, for a period of 32 weeks, the judgment provided for payments of $50 per week when, according to the separation agreement, respondent was responsible for payments of $60 per week. The judgment is therefore modified to the extent of increasing the child support arrears to account for the extra $320 to which appellant mother is entitled. In all other respects, the judgment is affirmed, insofar as appealed from. Mollen, P. J., Titone, Thompson and Bracken, JJ., concur.