In the Matter of JENNIFER LAUREN D., Respondent, MONY MENASHE F., Appellant. (Proceeding No. 1). STATE OF NEW YORK ex rel. STEPHEN R. TAUB, on Behalf of JENNIFER LAUREN F., Also Known as JENNIFER LAUREN D., Petitioner, v ELISE F., Also Known as ELISE D., Respondent. (Proceeding No. 2.)

Mony Menashe F. (Anonymous) (Mony) and Elise D. (Anonymous) (Elise) were married in New York on September 5, 1971. Soon thereafter they moved to Florida, and on July 10, 1974 they were divorced. The custody of their only child, Jennifer, was awarded to Elise and Mony was required to pay $30 per week for child support. In August 1980, Elise married the adoptive father and a second child was born to her of this marriage. Jennifer has continuously resided with her mother. The adoptive father alleges that Mony's abandonment of his daughter renders his consent to the adoption unnecessary. We agree.

It is uncontested that Mony and Elise agreed to divorce after the birth of their child. According to Elise, Mony told her that if the child were a girl he did not want it. Mony denies making such a statement. Jennifer was born on August 24, 1973, three months premature, and remained hospitalized in serious condition for two months. During her period of hospitalization the

Yom Kippur War erupted. Being a tank commander and an Israeli citizen, he departed immediately to fight for Israel, remaining there for approximately 22 days. Before Mony returned from Israel, Jennifer was discharged from the hospital. Upon her discharge, Elise took Jennifer to the home of her parents in Massapequa, New York, where they resided until Elise remarried. Mony returned to Florida in November 1973 and he called Elise at her parent's home in December 1973.

The record contains conflicting testimony about Mony's subsequent efforts to contact Elise. He contends that for two years after their separation he telephoned Elise in New York weekly but that most of his attempts were thwarted by members of her family who persistently refused to let him speak with her. He produced only one telephone bill, for July 1974 (the month during which the marriage was dissolved), which showed four calls to Elise's residence. According to Elise, she had no further contact with Mony until April 1974 when she, with Jennifer, arrived in Florida for a deposition related to the divorce. While in Florida, Elise brought Jennifer to Mony's apartment for a visit. Elise testified that the next contact from Mony was in August 1974, on Jennifer's first birthday, when he sent her a birthday gift and telephoned. Elise, her mother and brother testified that they were unaware of any calls from Mony other than the August 1974 call. Between 1974 and 1976, Mony twice appeared unexpectedly at Elise's residence, but she would not allow him in because, according to Elise, he had not called in advance or communicated with her since August 1974.

Mony testified that he sent Jennifer Christmas gifts and birthday cards annually which, after 1974, were returned to him. He also testified that he sent numerous letters to Elise, most of which were returned to him, but he did not produce them at trial.

In 1974, Mony was employed as an insurance salesman. His 1974 income tax return reflects a gross income of $7,163. He testified that he was unable to locate copies of tax returns for subsequent years, but that his annual income for the years 1975 through 1979 was approximately $5,000 per year. He testified that he earned $17,000 in 1980, $92,000 in 1982, and $150,000 in 1983. He moved to California in 1974, and now owns a health food store and a chain of electronic stores in the San Francisco area. He also publishes a weekly Hebrew news magazine and has offices in San Francisco and New York.

The evidence on this record is legally sufficient to support a finding of abandonment. Mony has failed to fulfill his child support obligation since 1974, although financially able to do so

for at least some of that period of time. Moreover, his last visit with Jennifer, now 11 years old, occurred when she was eight months old. In examining whether the burden of proving abandonment has been met, courts have held that while the natural parent's failure to visit and pay support are significant, these are not determinative factors where they may be properly explained (*see, Matter of Corey L v Martin L,* 45 NY2d 383; *Matter of Michael E. J.,* 84 AD2d 816). Mony commenced a habeas corpus proceeding to enforce his visitation rights in November 1982. He explained that his delay of some nine years in enforcing his visitation rights was caused by the lack of financial resources and his inexperience in dealing with lawyers. This explanation, however, is unpersuasive because the record establishes that Mony enjoyed considerable financial and entrepreneurial success since at least 1980.

It is obvious from the record that relations between Elise and Mony were strained and it appears that Elise hindered Mony's exercise of his visitation rights to some extent prior to 1976. However, any noncooperation on her part does not serve to excuse Mony's failure to visit, pay support, or attempt to enforce his rights for the six years between 1976 and 1982, and particularly for the two years between 1980 and 1982 when he earned a very substantial income (*cf. Matter of Corey L v Martin L, supra,* p 390).

Accordingly, the evidence adduced at the hearing amply supports the Family Court's finding that the natural father has evinced an intent to forego his parental obligations and has abandoned the child within the meaning of Domestic Relations Law § 111 (2) (a) (*see, Matter of Corey L v Martin L, supra; Matter of Amy SS.,* 64 NY2d 788; *cf. Matter of Samantha B.,* 106 AD2d 634), thereby obviating the need for his consent to the adoption. Lazer, J. P., Mangano, Gibbons and Rubin, JJ., concur.