■ In the Matter of JAMES ROBERT L. DAVID JAY R., Appellant; JAMES SALVATORE L. et al., Respondents.—In an adoption proceeding and proceedings brought separately by the child's natural father and paternal grandmother for an order granting them each unsupervised visitation rights, the appeal is from an order of the Family Court, Westchester County (Colabella, J.), dated September 27, 1984, which dismissed the petition for adoption and granted the petitions for unsupervised visitation.

Order affirmed, with costs.

Bearing in mind, as we must, that in a case such as the one at bar, where close issues of fact are presented, the hearing court's appraisals of credibility and resolutions of those issues must be given great weight *(see, Matter of Anonymous,* 81 AD2d 865, 866), there is legally sufficient evidence upon the record to uphold the hearing court's determination that the natural father did not abandon his son. To prove abandon-

ment, the petitioner has the "heavy burden" to show that the natural father's conduct "evince[d] a purposeful ridding of parental obligations and the foregoing of parental rights—a withholding of interest, presence, affection, care and support" *(Matter of Corey L v Martin L,* 45 NY2d 383, 386, 391).

The record indicates that the natural father regularly attempted to visit his son during the first year after he left the marital home, from August 1981 through September 1982. He made these visits even though he was frustrated by the fact that due to a court order of protection, to which he had consented, he was only able to visit his son within his former wife's home. His desire to keep in contact with his son was also frustrated by the natural mother's changing her telephone number on three occasions after they separated without informing him; twice, to unlisted numbers and the third time to a number listed under her new husband's name. It is also apparent that the natural father was only 18 years old when he married the natural mother in 1980. Given his youth and inexperience, he found it difficult to find stable employment or a permanent home, which, in addition to the fact that he was not permitted to freely visit with his son outside of the natural mother's home, caused him to be depressed.

In an effort, according to the natural father, to "establish a [new] life", beginning in October 1982 he began to attend a cosmetology school in Westchester County to train to become a hair stylist. In February 1983 he moved to southern New Jersey where he attended another cosmetology school and obtained full-time employment. He demonstrated his ability and desire to assume the duties and rights of parenthood for the two months preceding the hearing by weekly making a 500-mile round trip to visit his son for one hour pursuant to an interim order of visitation. He was also making support payments at this time.

Under these circumstances, the failure of the natural father to contact his son for the one-year period between September 1982 and September 1983 did not evince an intent to abandon him. The failure to pay support during this period is properly explainable by his financial inability to do so *(see, Matter of Corey L v Martin L, supra,* at pp 390-391). We therefore conclude that the hearing court's determination that the petitioner, David Jay R., failed to establish that the natural father had abandoned his son is supported by the evidence, and, consequently, the natural father's refusal to consent to the adoption barred the granting of the petition *(see, Kaplan v*

*Meskin,* 108 AD2d 787; *Matter of Samantha B.,* 106 AD2d 634).

In view of the natural father's demonstrated willingness and interest in establishing a relationship with his son, the granting of his petition for unsupervised visitation was proper. The record also discloses that the paternal grandmother demonstrated an interest and desire to establish a relationship with her grandson, and that the natural mother frustrated her attempts to visit and communicate with him. As a result, it was also appropriate to grant her petition for unsupervised visitation.

Finally, the petitioner's contention of excessive and undue interference by the hearing court in the examination of witnesses is meritless. In this civil proceeding which was not held before a jury, the danger that the court's intervention would unduly prejudice the petitioner was minimal *(cf. People v Moulton,* 43 NY2d 944, 945). In any event, the court's intervention was at all times evenhanded, and done purely for the purpose of clarifying factual issues or expediting the progress of the hearing, and was therefore proper *(see, People v Jamison,* 47 NY2d 882, 883-884; *People v Moulton, supra,* at p 945). Thompson, J. P., Rubin, Eiber and Spatt, JJ., concur.