■ In the Matter of Joshua, an Infant. Gilbert C. et al., Respondents; Mary Jo C., Appellant. [628 NYS2d 827] —Spain, J. Appeal from an order of the Surrogate's Court of St. Lawrence County (Rogers, S.), entered June 20, 1994, which granted petitioners' application, in a proceeding pursuant to Domestic Relations Law article VII, for adoption of Joshua.

Joshua (hereinafter the child) was born to respondent in May 1991 when she was 17 years of age and still attending high school. Petitioners are respondent's father and stepmother with whom respondent and the child resided from the time of his birth until late January 1993, when respondent left their home leaving the child in their care. Respondent eventually traveled to Florida where she remained for two months, and where she was arrested for shoplifting and spent 10 days in jail. Respondent returned to New York in April 1993 and took up residence with her stepsister in Monroe County for about three months. During this period respondent had a boyfriend by whom she became pregnant; he was arrested and incarcerated in January 1994. In July 1993 respondent left her

stepsister's home and lived from place to place; her whereabouts were unknown by petitioners until February 1994.[1]

In early May 1993, around the time of the child's second birthday, respondent visited petitioners' home and, at the suggestion of petitioners, took him to her stepsister's home in Monroe County for a visit. After about a week respondent returned him to petitioners. In late May 1993, after being laid off from work, respondent took the child and all his toys, clothes and other belongings back to her stepsister's home for an extended visit which was cut short by petitioner to approximately two weeks; she sent the child and all his belongings back to petitioners on or about June 13, 1993.

In late June or early July 1993, respondent's stepmother phoned her and told her that the child was crying a lot because he missed her and encouraged her to come and visit him. In reply, respondent stated that she was not sure if she had the $13 to $16 for a bus ticket; when it became clear that respondent was not coming to visit the child, her stepmother told her that the petitioners were going to adopt him. The record also reveals that at about this same time respondent was offered a ride to Potsdam with her stepsister, but refused because there was not enough room in the car for her boyfriend. Despite the stepmother's threat to adopt the child, respondent broke off contact with petitioners and did not have contact with the child again.

The only contact petitioners had with respondent after the phone conversation with her stepmother was through two separate phone calls made by respondent to her father in late November or early December 1993, in which she called and expressed her unhappiness about the way she was raised by her father and stepmother. No mention of the child was made by respondent during the first call; however, during the second call she heard the child crying and asked to speak to him. Her father, in response to her request, suggested that, because she too was upset and crying, she not talk to him; however, he did tell respondent that she could call back at any time. Although respondent acknowledged in her testimony that she was invited by her father to call back at any time, she never called back to speak to the child.

The next time petitioners heard from respondent was by letter in February 1994. Between early July 1993 and their receipt of this letter, petitioners did not know respondent's whereabouts; during this period of time she was not working

1. Respondent's second child was born in March 1994.

and relying on public assistance for support. After June 13, 1993, the date the child was returned to petitioners, respondent did not visit the child, she did not send him any cards or presents and she did not pay any support for him.[2]

Petitioners filed a petition for a private placement adoption on January 6, 1994, together with petitions for certification as qualified adoptive parents and for temporary guardianship. On March 23, 1994, Surrogate's Court issued an order awarding petitioners temporary guardianship of the child and certifying them as qualified adoptive parents. On April 20, 1994, respondent notified Surrogate's Court that she was contesting the adoption. In June 1994, after a hearing at which all parties testified, Surrogate's Court found that respondent had abandoned the child and that her consent to the adoption was not necessary. Respondent appeals.

We affirm. Domestic Relations Law § 111 (2) (a) states that consent to an adoption shall not be required of a parent: "who evinces an intent to forego his or her parental or custodial rights and obligations as manifested by his or her failure for a period of six months to visit the child and communicate with the child or person having legal custody of the child, although able to do so" (Domestic Relations Law § 111 [2] [a]). Respondent's intent to forego her parental rights and obligations must be established by clear and convincing evidence (see, Matter of Amy SS., 64 NY2d 788, 790; Matter of Eugene MM., 132 AD2d 780, 781; Matter of Lisa Marie F., 110 AD2d 993, lv denied 65 NY2d 603). Moreover, a biological parent's failure to visit and pay support, although significant, are not determinative factors where they are properly explained (see, Matter of Corey L v Martin L, 45 NY2d 383, 390; Matter of Jennifer Lauren D., 110 AD2d 699, 701).

A review of the record leads us to conclude that the evidence presented at the hearing is the type of clear and convincing evidence necessary to support the finding by Surrogate's Court that respondent evinced an intent to forego her parental rights and obligations and abandoned the child within the meaning of Domestic Relations Law § 111 (2) (a). Respondent's request to speak to the child during the phone conversation with her father in late 1993 was barely a " 'flicker of interest' ", a test which was overridden by a 1975 amendment to Domestic Relations Law § 111 (see, Matter of Amy SS., supra, at 790; Matter of Corey L v Martin L, supra, at 390). Her lack of visitation and communication and her failure to provide support were not

2. Some child support was being paid by the child's biological father who consented in January 1994 to the adoption by petitioners.

satisfactorily explained (see, Matter of Corey L v Martin L, supra, at 390). Despite her claims that petitioners frustrated her attempts to communicate with the child, the record reveals that petitioners actually attempted to bring respondent and the child together. Respondent's argument that she did not send the child any presents or support because she did not have any funds is unavailing in light of her complete lack of visitation and communication with the child for over six months. The record convincingly supports the conclusion that it is in the child's best interest to allow the adoption to proceed as determined by Surrogate's Court (see, Matter of Donald U., 105 AD2d 875, lv dismissed 64 NY2d 603).

Respondent's contention that Surrogate's Court abused its discretion in not appointing a Law Guardian to represent the child is also without merit. This case is not one in which the appointment of a Law Guardian is mandated (see, Family Ct Act § 249). Furthermore, in light of all of the circumstances of this case, we conclude that Surrogate's Court did not abuse its discretionary authority in choosing not to appoint a Law Guardian for the child (see, Matter of Amanda, 197 AD2d 923, 924, lv denied 82 NY2d 662).

Respondent also contends that Surrogate's Court committed error in permitting petitioners to present rebuttal evidence; however, it is well settled that rebuttal evidence is a matter within the discretion of the trial court (see, Pullo v Stern, 175 AD2d 554, 555; Young v Strong, 118 AD2d 974, 976). Furthermore, even if it were error to allow this evidence, the error was harmless, especially when it was not mentioned as playing any part in the court's decision.

Finally, respondent asserts that she was denied the effective assistance of counsel. The record reveals that respondent was provided meaningful representation by her assigned counsel (see, Matter of De Vivo v Burrell, 101 AD2d 607; see also, People v Baldi, 54 NY2d 137; Matter of Jamie J., 209 AD2d 896, 898). Respondent's claims with respect to the competency of her attorney are without merit.

Mikoll, J. P., Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the order is affirmed, without costs.