OPINION OF THE COURT
Kerry R. Trainor, J.
In these consolidated “step-parent” adoption and visitation *151 proceedings, the court must determine whether Eugene O’K., who is the natural father of Kaitlyn D., date of birth December 28, 1995, has abandoned his child within the meaning of Domestic Relations Law § 111, thus obviating the need for his consent to the child’s adoption and otherwise defeating his application for enforcement and/or modification of his right of visitation with the child.
The issue of Mr. 0’K.’s alleged abandonment was tried before the undersigned over the course of several days between January 10, 2000 and February 7, 2000 at which time the court’s decision was reserved. As is common in these types of proceedings, the bulk of the relevant evidence consisted of the testimony of the child’s parents, Patricia D. and Eugene O’K. Each gave their own version of the salient facts, with different degrees of credibility. With due regard to the totality of the evidence, and giving appropriate weight to the litigants’ respective veracity, the court makes the following findings and conclusions in this matter.
Litigation History
During the hearing, counsel for the parties stipulated to a certain factual/procedural “time line” (court exhibit No. 1) of the events leading up to this abandonment hearing. There is no dispute that the child, Kaitlyn, was born out of wedlock to Patricia D. on December 28, 1995 and that Eugene O’K. filed separate paternity and visitation petitions with this court approximately one year later (P-21-97, V-83-97).
Mr. O’K’s paternity of Kaitlyn was established by admission on January 31, 1997, and child support was fixed by agreement the same date in the sum of $85 per week ($75 child support, $10 towards retroactive arrears). On that same occasion, the parties consented to a custody/visitation order before Judge Freundlich of this court. Mr. O’K. was awarded EAC-supervised visitation with Kaitlyn, once per week for one hour, with such other visitation the parents could agree to.
Patricia D. had by then become married to William D. After the entry of the paternity, child support and visitation orders on January 31, 1997 Mrs. D. and Mr. O’K. found themselves in court on several subsequent occasions. Specifically, in June 1997, December 1997, and July 1998, there were support violation proceedings filed against Mr. O’K.
Thereafter, on July 24, 1998, Mrs. D. and her husband, William, filed adoption papers with this court, specifically alleging *152 the abandonment of Kaitlyn by Eugene O’K. Notwithstanding that the papers were filed in July 1998, Mr. O’K. was not formally served with notice of the proceeding until December 6, 1999. However, several months earlier, specifically, on September 23, 1999, Mr. O’K. swore to a visitation enforcement/ modification petition in this court, which was ultimately “filed” on September 28, 1999. Nevertheless, Mr. 0’K.’s visitation petition was not actually served on Mrs. D. until November 24, 1999 (some two weeks prior to Mr. O’K. being served with the adoption-abandonment notice). Ultimately, the parties appeared before the court on both matters on January 10, 2000 and the consolidated hearing ensued.
Law Issues
The first issue that must be addressed by the court is whether any evidence of Mr. 0’K.’s interest in his child after the date of the filing of the adoption petition should be considered. Counsel for Mr. and Mrs. D. takes the position that the filing date is critical and it makes no difference that Mr. O’K. was not served with notice of the adoption proceeding until 15 months after its filing. Counsel for Mr. O’K. asserts that the date of notice should be the measuring date and, accordingly, the court should consider Mr. 0’K.’s efforts and/or attempted contacts during the period between the actual filing of the adoption (July 24, 1998) and the date of his visitation petition (Sept. 23, 1999).
The relevant statute, Domestic Relations Law § 111, offers no guidance in this regard other than referring to the six-month period of abandonment. Although there is case law to the effect that the six-month abandonment period is that period immediately preceding the filing of the petition (see, Matter of Ryan Paul L., 112 AD2d 47 [4th Dept 1985]), and while the related abandonment statute in Social Services Law § 384-b refers to that prefiling period, there is no specific authority addressing the unique situation where there is an inordinate delay between filing and service (here, a delay of 15 months).
Matter of Maria S. (145 Misc 2d 99 [1989]) is an appropriate reference. There Judge De Phillips (Fam Ct, Queens County) ruled that abandonment under Domestic Relations Law § 111 could not be established where the evidence showed that the father visited with the child on numerous occasions prior to his receiving knowledge of the adoption proceeding. Although no definite rule of construction was established in Maria S., the reasoning is very sound. Assume that a father actually lives *153 with and supports his child after the filing of an adoption petition, but before service upon him of notice of the adoption proceeding, with a substantial “gap” (for example, 15 months). Would the court have to ignore the recent parent-child relationship that developed after the filing of the petition and only hear evidence of prefiling “abandonment”? This, in the court’s mind, is an absurd and improper result. The date of notice of the adoption, whether actual notice by service of process or constructive notice by word, deed or communication, should be the critical measuring date, not the technical filing date. To do otherwise allows for the creation of a dangerous fiction which could (in certain factual scenarios) prevent a caring, concerned noncustodial parent from defeating a stale abandonment claim.
Accordingly, the court rejects Mr. and Mrs. D.’s argument that the evidence should be limited to events that occurred prior to the filing of the adoption on July 24, 1998. The court finds that evidence of communication or attempted communication by Mr. O’K. after July 24, 1998 up until the date of his actual or constructive knowledge of the adoption (Dec. 6, 1999) should be considered. Whether such communication or attempted communication during this period is sufficient to defeat the claim of abandonment is, of course, an open question that is dependent upon the facts.
In this regard, the court accepts the well-developed body of abandonment law arising out of Domestic Relations Law § 111 and otherwise weighs the evidence herein in light of that law. (See, Matter of Corey L v Martin L, 45 NY2d 383 [1978]; Matter of Ryan Paul L., supra; Matter of Omar RR., 270 AD2d 588 [3d Dept 2000].)
Findings and Conclusions
There is no real dispute that Mr. O’K. last visited with his daughter on or about June 2, 1997, when the EAC-supervised visitation he had previously been exercising was suddenly terminated due to a scheduling disagreement between the parents. Although he had the benefit of a valid court order (for EAC-supervised visits) Mr. O’K. did not attempt to enforce that order or seek to modify it until September 23, 1999, when he finally presented an appropriate petition to the court. During this period of over two years, Mr. O’K. did not see his daughter. He did not make any sensible good-faith attempts to arrange for visitation. Mr. O’K. operates a small demolition business in which he hires helpers to assist him in this demanding physical labor. At the conclusion of one day’s work, *154 he and one of his employees left the demolition site, went to the hospital where Mrs. D. worked and asked to be directed to her nursing station. It’s not surprising that the hospital staff ordered these inappropriately dressed burly men to leave.
The credible evidence clearly demonstrates that Mr. O’K. failed to send any birthday or holiday cards or gifts to the child, or any letter of any sort. His claim that Mrs. D. had moved to an undisclosed location in Suffolk County and that this effectively prevented such communication is belied by the record and is rejected. Although the family had moved, the new address was on file, all mail was forwarded, and Mr. O’K. had the telephone number. In addition, although there were friends and relatives on both sides who knew where the D.s lived, Mr. O’K. never sought information from them. He was apparently content not to have any contact or communication with his child during this long two-year period.
During the relevant period prior to December 6, 1999, Mr. O’K. was before this court on several occasions in response to support violation petitions brought against him by the Suffolk County Support Collection Unit. The records of those proceedings reflect that he was found to have wilfully violated the support order (of Jan. 7, 1997, $85 per week) and that he was referred for incarceration. In response, Mr. O’K. avoided a jail term by making lump-sum payments, the most recent being on August 3, 1999 in the sum of $4,909.
Although Domestic Relations Law § 111 (6) (d) states that the payment of a fair and reasonable sum of child support shall be deemed a “substantial communication” with the child, there must be some voluntary aspect to the payment if it is going to defeat a claim of abandonment. Here, the evidence is quite clear that Mr. O’K. did not make these lump-sum support payments because of love and concern for his child. He did it to avoid a jail term. These payments are not “voluntary” payments which evince a commitment to the child within the meaning of Domestic Relations Law § 111 (6) (d). (See, Matter of Anonymous, 104 Misc 2d 229 [Sur Ct, Richmond County 1980].)
Finally, the court accords little or no weight to Mr. 0’K.’s act of filing a visitation petition in September 1999 after over two years of inactivity and avoidance of his parental responsibility. This amounts to nothing more than an inconsequential “flicker of interest” which, by itself, is insufficient to defeat a claim of abandonment. (See, Matter of Corey L v Martin L, supra.) Moreover, the evidence suggests that at or about the time of this fil *155 ing, Mr. O’K. suspected that a claim of abandonment might be levied against him by Mrs. D. in an adoption proceeding. Thus, there are serious questions about the sincerity of his visitation petition, and whether it was filed in an attempt to veto the adoption as opposed to repairing the relationship with his child.
On balance, the credible testimony clearly and convincingly establishes that Mr. O’K. abandoned his daughter, Kaitlyn D., within the meaning of Domestic Relations Law § 111. His failure to visit and communicate with his child simply cannot be excused on this record. The adoption may therefore proceed without his consent.