OPINION OF THE COURT
Michael L. Hanuszczak, J.
On March 5, 2001, petitioner mother, and her husband, filed a petition for adoption, seeking the court’s approval of the proposed adoption of the subject child. The petitioner is the natural mother of the subject child; her husband seeks to adopt this child. The natural father of the child was incarcerated at the time of the filing of the adoption petition. He was released from a New York State correctional facility in April of 2001, and he was personally served with the notice of proposed adoption at the home of his parents on April 18, 2001.
On April 10, 2001, petitioner mother filed a petition to modify a prior order of visitation, and order to show cause, seeking to suspend all rights of visitation of the respondent father, pending the proceedings on the separate, but related petition for adoption. The order to show cause, suspending visitation until further order of this court, was signed on April 11, 2001.
The respondent filed a motion to dismiss the visitation modification petition on May 9, 2001, and oral argument was heard on May 15, 2001. Decision was reserved, and on June 19, 2001, this court issued a written decision denying respondent’s motion to dismiss. A hearing on the adoption petition commenced September 6, 2001, and after five days of testimony, the hearing concluded on October 19, 2001, at which time this court reserved decision. This decision shall serve as the order of this court.
The issue presented by this petition for adoption is controlled by Domestic Relations Law § 111, which directs whose consent must be secured before a child may be adopted. The petitioners assert in their petition (para [12] [a] at 4), that consent of the natural father to the proposed adoption is not required because “[t]he natural father has failed to maintain adequate contact and communication with the child, or the person having the *368 care and custody of the child, for a period of six months or more.” The petitioners further allege, in paragraph (12) (b) (at 4) of their petition, that “the natural father has failed to provide reasonable financial support for the benefit of the child.”
Domestic Relations Law § 111 directs that consent to the adoption of a child born out of wedlock, as here, is required of the mother (Domestic Relations Law § 111 [1] [c]), and of the natural father, where the child, as here, is more than six months old. (Domestic Relations Law § 111 [1] [d].) The consent of the father of an out-of-wedlock child over the age of six months is only required, however, if such father shall have maintained substantial and continuous or repeated contact with the child as manifested by (the following):
“(i) the payment by the father toward the support of the child of a fair and reasonable sum, according to the father’s means, and either (ii) the father’s visiting the child at least monthly when physically and financially able to do so and not prevented from doing so by the person or authorized agency having lawful custody of the child, or (iii) the father’s regular communication with the child or with the person or agency having the care or custody of the child, when physically and financially unable to visit the child or prevented from doing so by the person or authorized agency having lawful custody of the child.” (Domestic Relations Law § 111 [1] [d] [emphasis added].)
Pursuant to Domestic Relations Law § 111 (2) (a), consent shall not be required of a parent who evinces his intent to forego parental rights and obligations as manifested by his failure for a period of six months to visit or communicate with the child. The courts have held that a parent’s attempts to exercise visitation rights after the filing of the petition for adoption are of no legal significance. (Matter of Ryan Paul L., 112 AD2d 47 [4th Dept 1985].) It is the six months immediately preceding the filing of the petition for adoption that will be scrutinized by the court. (Domestic Relations Law § 111; Social Services Law § 384-b.)
In Matter of Kaitlyn D. (184 Misc 2d 150 [Fam Ct, Suffolk County 2000]), the Family Court of Suffolk County held that the date of notice, whether actual or constructive, is the “critical measuring date” from which the six months is to be counted. In that case, the court was confronted with an inexplicable *369 delay in service, after the filing of the petition, of 15 months. The court found that although the “technical” date from which to measure the six months is the filing date, in the court’s opinion, the date of actual or constructive notice should be the “critical measuring date.” (Id. at 153.) In the case at bar, this court is not confronted with an inordinate delay in service; here, the petition was filed with the court on March 5, 2001, and the respondent was served on April 18, 2001. More to the point, however, until this state’s appellate courts, or the Legislature amends the statute, this court is required to follow the statutory mandate. The court therefore holds that the critical measuring period is, as the statute states, the six months immediately preceding the filing of the petition. This court therefore declines to follow Matter of Kaitlyn D., and is of the opinion that the holding of that case should be limited to its specific facts. Accordingly, the relevant time period in this matter is September 5, 2000 to March 5, 2001,
The respondent father has the burden of proof to establish that he maintained the requisite contact in the relevant time period. Pursuant to Domestic Relations Law § 111 (1) (d), an unwed father must establish substantial and continuous or repeated contact with the child as manifested by the payment of support of a fair and reasonable sum. With regard to this first prong of the requirements set forth in Domestic Relations Law § 111, the court makes the following finding, based upon the testimony and evidence received, and in view of the relevant time period: at the hearing, the respondent father was specifically asked by opposing counsel, with regard to respondent’s exhibit 2, the Oswego County Office of Child Support Enforcement payment history, whether there were any payments of child support that the father had made during the period of January 5, 1998 through August 27, 2001, that were not reflected on the document. The response of the respondent was, “[n]ot that I can recall.” The court notes that exhibit 2 lists no payment of support for the time period of September 2000 through March of 2001 (in fact, there were no payments of support whatsoever in the year 2000, and the first payment of support in 2001 is a May 14, 2001 payment).
The respondent was incarcerated from October 21, 1999 until April 5, 2001. The fact of his incarceration does not, however, relieve him from his obligations. Domestic Relations Law § 111 (1) (d) specifically provides that the payment of a fair and reasonable sum shall be as according to the father’s means. The courts have held that incarceration does not excuse *370 the father from his obligation to pay support. (Matter of Amanda, 197 AD2d 923, 924 [4th Dept 1993] [“The fact that a parent is incarcerated does not in itself excuse his failure to support, maintain contact with, or plan for the future of his child”].) Even if the court were to look outside of the six months immediately prior to the relevant time frame, this respondent has, at best, a spotty record of the payment of support. Additionally, as testified to at the hearing, most of what support has been paid for. this child has been paid by the child’s paternal grandparents. Although the father’s mother testified that when her son was working, he would get things for his daughter or pay back some money to his parents, the testimony revealed that the father was rarely employed prior to October 1999, and when he was employed, it was rarely for more than, a few weeks. The respondent was extraordinarily vague as to his employment history, as well as with regard to anything else he may have done to provide for his daughter financially. The respondent testified that he “occasionally” brought diapers to the mother, or to his mother’s house. The record of this father’s efforts to provide responsibly for his child is underwhelming, and despite his testimony that the provision of support is one of paramount importance to him, his actions belie this claim. This court finds that this respondent has not maintained substantial and continuous or repeated contact with his child as manifested by the payment of a fair and reasonable sum, according to his means.
Since Domestic Relations Law § 111 requires that the father must prove both prongs, that is, the payment of support and either substantial and continuous contact with either the child or the person having custody of the child, the court could end its inquiry here. The determination that the consent of an unwed father in an adoption proceeding is not necessary is a process that requires careful deliberation, however, and should not be undertaken lightly. This court will therefore continue its examination of this father’s efforts with regard to his child.
Domestic Relations Law § 111 requires that a father establish either a pattern of visiting his child at least monthly when physically and financially able to do so, and not having been prevented from doing so by the person having custody of the child, or, that he has had regular communication with the child, or with the person having custody of the child, when he is physically and financially unable to visit the child or prevented from doing so by the person having lawful custody of the child. In the relevant time period, September 5, 2000 until *371 March 5, 2001, the respondent father was incarcerated. It is the respondent’s testimony that he believed he was to have no contact whatsoever with his daughter, whether by mail, telephone, or otherwise, while he was incarcerated, pursuant to court order. The order in question was issued by the Oswego County Family Court by the Honorable Walter Hafner, Jr. subsequent to the filing of a petition for visitation brought by the paternal grandparents. (Oswego County Fam Ct file, respondent’s exhibit 21.) The order was issued as a result of a May 9, 2000 appearance by the parties; it is dated July 19, 2000, and was filed and entered on July 20, 2000. This order, in pertinent part, prohibits the petitioners, who were the paternal grandparents, from transporting their grandchild to any correctional facility for the purpose of visiting with her biological father, and further orders that the subject child is not to have telephone contact with her biological father while he is incarcerated. Although the court references the respondent father, it did so only within the parameters of the grandparents’ visitation, and only insofar as the child is concerned. The order neither directs the nonparty father to do something, nor does it prohibit him from taking some certain action. As the issue of the father’s exercise of his visitation rights was not before the court, the order does not address it. The attorney who represented the grandparents on their petition for visitation in May 2000 testified at the hearing in the instant matter. On cross-examination, this attorney stated that it was his “presumption that (as a result of the May 9, 2000 order) that there was to be no contact” between the child and her father. The attorney stated, however, that he did not tell the father to have no contact with the mother of the child. Regarding the issue of contact with the child by mail, this attorney testified that he did not believe he had discussed that with the respondent father. The respondent father testified that he learned from his parents that he was to have no contact with his daughter, of any kind. The respondent also testified that he did not directly discuss his understanding of the May 2000 court order with his attorney (the same attorney that had represented the paternal grandparents on their petition for visitation), except as through his parents. The attorney for the grandparents testified as well that he did not believe he had discussed the May 2000 order directly with the respondent father, citing difficulties in reaching him at prison. The respondent father, and his mother, maintained throughout their testimony that they believed the respondent was to have no *372 contact of any kind with his daughter. Further, they both maintained throughout their testimony that the respondent father did not have any contact with his daughter after May 2000.
It has long been held that the fact of a parent’s incarceration does not excuse his failure to maintain the requisite contact with his child. (Matter of Krysheena, 265 AD2d 816 [4th Dept 1999]; Matter of Clair, 231 AD2d 842 [4th Dept 1996]; Matter of Amanda, 197 AD2d 923, 924 [4th Dept 1993].) Note that the statute does not insist solely upon contact with the child-, a father may establish the requisite contact by maintaining contact with the person having lawful custody of the child. Clearly, the respondent father here may not rely upon the May 9, 2000 order of the Oswego County Family Court, as that order merely prohibited the petitioners, the paternal grandparents, from taking the child to the state correctional facility where their son was incarcerated, and further, merely prohibited telephone contact by the child with her father while he was incarcerated. That order most decidedly did not prohibit this father from mailing cards or letters to his daughter at her mother’s home, nor did the order prevent the father from contacting the child’s mother by mail to inquire as to the child’s health and well-being. As has been discussed supra, that order could not have so ordered, as the respondent father was not a party to the action.
The respondent in this matter has not provided the court with documentary proof of any attempted contact with his child via cards or letters during the relevant time period, nor that such attempts were thwarted or met with overt interference by the mother. (Matter of Clair, supra.) And, although there was no order prohibiting the respondent from direct contact with his daughter, it has been held that even when a parent is prohibited from direct contact with a child, that parent “continues to have an obligation to maintain contact with the person[s] having legal custody of the child[ren].” (Matter of Krysheena, supra at 816 [citations omitted].) Again, there is no proof before the court that the respondent maintained contact with the mother, nor is there proof of attempted contact that was thwarted by the mother during the relevant time period. The respondent testified that he had no contact with his daughter either directly, or indirectly, after May 9, 2000. However, he also testified having sent two letters to the mother, one in January 2000, and the second in August 2000. Both letters are outside the relevant time period; even if they were not, *373 however, two letters, seven months apart, do not rise to the level of substantial and continuous or repeated contact that is demanded by Domestic Relations Law § 111.
As adoption is solely the creature of statute, the courts must strictly construe the adoption statute. (Matter of Ralph, 274 AD2d 965 [4th Dept 2000].) The court finds that the respondent father has failed to meet his burden of clear and convincing evidence of substantial and continuous or repeated contact with the subject child, or with the person having legal custody of the child. The respondent father has failed to establish that he ever paid support for this child in any regular or meaningful way which would sustain a finding of substantial and continuous contact with the child. When child support has been paid for this child, it has most often been paid by the paternal grandparents; indeed, the evidence shows that the respondent has been found to have willfully violated the order of support, that a warrant had to be issued for his arrest for failure to appear on another support violation petition, and that the respondent was sentenced to six months’ incarceration for failure to pay support, which sentence was suspended. A third petition alleging the failure to pay support resulted in a money judgment. Respondent’s attempts to convince the court that he has provided for the child in any other supplemental way were not persuasive; instead, the record is replete with examples of the respondent’s parents having either paid support, or having purchased gifts for his daughter. As was so succinctly stated in Matter of Anonymous (104 Misc 2d 229, 231 [Sur Ct, Richmond County 1980]), “[t]he Legislature in enacting paragraph (d) of subdivision 6 [of Domestic Relations Law § 111] did not intend that the father who is dragged to the support table has thereby established substantial communication with his child.” Nor, this court would add, did the Legislature intend that a father be credited with having responsibly met his obligation to support his child, where that support has been largely paid by others.
The respondent has also failed to establish by clear and convincing evidence that he maintained substantial and continuous or repeated contact in the form of regular communication with the child, or with the person having lawful custody of the child. As stated above, the respondent may not rely on the fact of his incarceration as an excuse for not having maintained contact. Nor is the subjective intent of the father, whether expressed or otherwise, unsupported by acts specified in Domestic Relations Law § 111, a factor that may preclude a *374 court’s findings that a father has failed to maintain the required substantial and continuous contact with his child. The court notes that while incarcerated, the respondent father himself applied to have his child support obligation reduced. The respondent father maintains that he was under the belief he could not have contact of any kind with his daughter. He did not, however, make any attempt to petition the Family Court to have contact with the child reinstated, or permitted on a limited basis. The standard in petitions for the adoption of a child where it is alleged that the consent of the natural father is not required is no longer a “flicker of interest.” The respondent father here has not met his burden of clear and convincing evidence that he has maintained the requisite contact as set forth in Domestic Relations Law § 111. This court therefore finds that the consent of the respondent father herein is not required for the adoption of the subject child. Accordingly, further proceedings on the adoption petition, docket number A-49-01, will be scheduled by the court and the petitioners will be notified of their appearance date. By order to show cause, this court previously ordered, on April 11, 2001, that all rights of visitation of the respondent be suspended until further order of this court. In accordance with this court’s findings in the instant matter, petitioners’ counsel is hereby ordered to prepare an order permanently revoking all rights of visitation for the respondent under docket number V-576-01, given this court’s decision under docket number A-49-01.